Whiting v. Eichelberger.

## WHITING v. EICHELBERGER *et al.*

1. CONTRACT: MORTGAGE. It is not necessary that a contract of sale should be in the form of a mortgage to preserve the lien of the vendor or his assignee. Notwithstanding a contract is not technically a mortgage, equity will recognize and sustain it as such, when it appears therefrom that it was so intended.

2. SUPPLEMENTAL PLEADING. A supplemental pleading, setting out notes, which constitute a part of the transaction, which is the basis of the bill, and which matured after the filing of the same, is unnecessary, where the bill is so framed as to seek a remedy on all notes which should mature before final decree.

3. APPLICATION OF PAYMENTS. When moneys are paid by a debtor to a creditor holding several demands against him, he may direct the application of the same. If he fails to make such direction, the creditor may make the application, and if he fails, the law will make a fair and just application.

*Appeal from Henry District Court.*

MONDAY, JUNE 20.

W. P. BRAZLETON owned the "Brazleton House," and furniture therein, and on the 12th of October, 1857, made with the defendant, Eichelberger, an agreement or contract, the material parts of which are as follows:

"Said Brazleton, in consideration of the covenants of said Eichelberger herein, doth hereby let and lease unto the said ―― ―― the premises known as, &c., with all the privileges, &c., for the term of five years." * * * " And the said lessor hereby sells to the said lessee all the furniture, beds, bedding, &c., pertaining to said tavern, the price and value of said personal property to be ascertained by inventory, and appraisement to be made as follows: the lessor to choose one man, and the lessee one man, &c.; and they shall proceed and make an inventory and appraisement of said furniture, &c., which shall be binding on the parties, when signed by said appraisers, &c. * * * And said Eichelberger, in consideration of the foregoing, hereby agrees to pay to said lessor the sum of fifteen hundred dollars per year rent, for said premises, payable in equal monthly payments, at the expiration of each month, while he holds the same under this lease, and in payment for said furniture, &c., hereby sold to said Eichelberger, said lessee is to convey to said lessor 160 acres of land, * * * which said lessor takes at $800; and said lessee is to give said lessor $800, in obligations due by the 1st day of January next, and the balance due upon said furniture, &c., after deducting said $1,600, shall be paid by said lessee to said lessor in sixty equal monthly payments, for which notes shall be given, with ten per cent interest; * * * and said furniture is to remain in said premises; *and said lessor is to have a lien on the same for the faithful perform-*

*ance of this obligation*, on the part of said lessee, and especially for the security of said obligations of $800, * * * and for the security of the balance remaining unpaid on said furniture, and for said rent. * * * * And at the expiration of this lease, the lessor is to pay the lessee the price and value of the necessary and suitable furniture, &c., then pertaining to said house, the value of which is then to be ascertained in like manner. * * * * It is understood that upon the expiration of this lease, or its earlier termination, by the mutual consent of the parties, said Brazleton is to pay said Eichelberger $1,600 upon the furniture, upon his taking possession, and deliver to said Eichelberger his notes remaining (then) unpaid upon said furniture; and the balance of the value of said furniture is to be paid by the said lessor, in like manner, and monthly amounts, as the same shall have been paid by said lessee to said lessor, *with like security*, and for which said lessor is to execute to said lessee his like notes, with ten per cent interest.    Interest payable annually."

This agreement was duly acknowledged and recorded.

It seems that the furniture was appraised, and for its value as thus ascertained, Eichelberger executed to Brazleton or order, his sixty notes for $73 each, payable as expressed in this agreement.    A portion of them were paid, but the greater part remaining unpaid, they were transferred on the 10th of April, 1858, to plaintiff, and on the same day Brazleton, on the margin of the record, made and signed this paper :

"For value received, I hereby assign, sell and set over to Timothy Whiting all my right, title and interest to and in the annexed personal mortgage, made by John Eichelberger to me.            "WM. P. BRAZLETON."

Brazleton and Whiting had been doing a banking business, and on this day dissolved.    Whiting was to superin-

tend the settlement of the affairs of the firm. It seems, also, that Brazleton was largely indebted to Whiting for advances made, and these notes and the mortgage (so called), with other property, were transferred to indemnify and protect him for such advance and liability, and, hence, at the time, they made a further agreement which, so far as it relates to the present controversy, is as follows:

"And the said Brazleton also hereby sells and assigns to the said Whiting all his right, title and interest of, in and to the stock, lands and tenements, &c., in the Union Real Estate Company. * * And he further sells and assigns to said Whiting a certain instrument in writing, in the nature of a lease and bill of sale, made and executed by Eichelberger to said Brazleton, on the 12th day of October, 1857, on certain furniture, &c. * * * And it is further understood that if said Brazleton shall pay any debts against the late firm, that he may apply the same towards the redemption of the interest in the Union Real Estate Company. * * * And, also, that he *may* apply the same on the redemption of the instrument in writing, from Eichelberger to him, assigned to Whiting. * * * And the said Brazleton doth hereby constitute the said Whiting his attorney, irrevocable, in his, the said Whiting's name, or in the name of the firm, to collect all debts due the said firm, to institute and prosecute suits for the recovery of said debts, or to compound the same, as he may judge most expedient."

Whiting was to collect and apply the firm means to the payment of their debts, and if anything remained, one-half of the surplus was to be paid to Brazleton, and the losses, if any, were to be borne equally.

On the 10th of July, 1859, W. P. Brazleton sold and delivered to his father, Samuel Brazleton, all the furniture in and about said "Brazleton House," for the consideration of $4,000, and also leased him the said "House" for the

term of two years, at a rent of $1,000. W. P. agreed to take the property at the end of one year, at the lessee's option, paying for the furniture as in the contract provided. The lease also referred to the "bill of sale" on the furniture assigned to Whiting, and the lessor agreed to protect the lessee against all claims and hold him harmless as to any suits that might be brought.

Plaintiff instituted this proceeding against Eichelberger in March, 1859, asking judgment on the notes and the foreclosure of the contract of October 12, 1857, treating it as a mortgage. On motion, Samuel Brazleton was afterwards made defendant. Eichelberger makes no defense, but submits that plaintiff is entitled to the relief asked. Samuel Brazleton answered, and the cause was heard upon the issue as thus joined. Decree for plaintiff in the sum of $3,387.39, and Brazleton appeals.

*A. H. Bereman* and *L. G. Palmer* for the appellant.

1. The instrument in controversy is not a chattel mortgage. It fixes no lien upon the property as a present charge (*Fielding* v. *Middleburgh's Administrator*, 1 West. Law Month., 218); the furniture was not ascertained, neither was the amount to be secured. *Bullock* v. *Williams*, 16 Pick., 33.

*William A. Cook* for the appellee.

1. The instrument is a mortgage, possessing the requisites of both a lease and a mortgage. 1 Bouv. Inst., 348; 2 Story Eq. Jur., §§ 1013, 1015–1018; *Brewster* v. *Baker*, 20 Barb., 369; *Lake's Executor* v. *Palmer et al.*, 36 Ala., 323.

WRIGHT, Ch. J.—In the foregoing very full and lengthy statement, we have the substantial facts out of which this controversy arises. It will be seen that the case is inti-

mately connected with the one immediately preceding. Like that, it is voluminous in its record and facts, and yet presents no question of much doubt or difficulty.

I. It is claimed that the contract between Eichelberger and Brazleton, of October 12, 1857, and assigned to plaintiff, was not intended to give, and did not have the effect of giving a lien on the sold furniture for the payment of the purchase-money and rents. It is worthy of remark that this position seems to be taken for the first time in this court, for throughout the entire transactions between the parties and in the pleadings of the very party now making this objection, this instrument is spoken of as a mortgage. Indeed nothing can be clearer than that all the parties have regarded it as indisputable, as a matter about which there was no room for controversy, that Brazleton, under this agreement, had a lien upon the entire furniture of the house thus sold, to secure the payment of the lessee's indebtedness. Eichelberger admits this. W. P. Brazleton, in his testimony, so treats it. The appellant, in his answer, gives it this character, and places his defense and his right to the property upon other and distinct grounds. And while it is true that these matters are not to be taken as conclusive in the construction of the instrument, they serve to assist in arriving at the purpose and intention of the parties in making their contract.

It may be conceded that the agreement is not a mortgage in form. Nor is it necessary that it should be in order to preserve the lien of the vendor or his assignee. As in case of a mortgage, no particular form or words are necessary, in order to give it that character; so, when the party claims a lien, without having a technical mortgage, a court of equity will recognize and sustain it, whenever, from the agreement or contract, it appears that it was so intended. "Indeed there is generally no difficulty in equity in establishing a lien, not only on real estate, but on personal

property, or on money in the hands of third persons, whenever that is matter of agreement, at least against the party himself and third persons, who are volunteers, or have notice of it; for it is a general principle in equity, that as against the party himself and any claiming under him voluntarily or with notice, such an agreement raises a trust." 2 Story Eq. Jur., 1231; *Legard* v. *Hodges*, 1 Ves., Jr., 478; *Drosley* v. *Vosley*, 12 A. & E., 632. In this case appellant had full notice of the agreement. It was on record; had been assigned to plaintiff; and his contract of purchase from W. P. Brazleton expressly refers to it.

The thought that this contract was only an agreement to make a mortgage or give a lien, by some subsequent writing, is not tenable. Nor is there any more force in the suggestion that there could be no lien, because the amount or value of the property was to be ascertained or fixed by a subsequent or future act of the parties. The language of the agreement is that the lessor "*is to have a lien*" for the faithful performance of the lessee's obligation, and especially for the balance remaining unpaid on the furniture and rent. There was no condition as to such security. The sale was made, the property delivered, the terms were agreed upon, and it only remained to ascertain the value, by having the property appraised by two (or three) persons selected in the manner specified in the writing. The doctrine for which appellant contends has reference to cases of constructive delivery of personal property, and not to transactions like that now before us. Not only so, but at all events, when the property was appraised and the notes executed, the contract was complete, and this was long before the assignment to plaintiff. Then, again, it must not be forgotten that this agreement was between lessor and lessee, and that, without any stipulation to that effect, the landlord would, by the express language of the statute, have a lien *for the rent* upon the personal property of

the tenant, used on the premises during the time, and not exempt from execution, and there is no necessity, for it is impossible, to ascertain and settle in advance the specific property upon which such lien is to rest. This agreement, so far as it relates to the rent reserved, was but that which the law had already made, and in terms extended the same lien over this property to the vendor and landlord, for the purchase-money.

II. At the time this suit was commenced but part of the notes were due. Plaintiff so framed his bill as to seek a recovery for all that might mature before the final decree. This obviated the necessity of an amendment or supplemental pleading, setting up the necessary matter and asking the same relief; and especially is this true under the very full and specific relief asked for in the bill, when no objection was made thereto by demurrer, or otherwise, in the court below.

III. But appellant maintains that under the clause in the agreement, between Brazleton and Whiting, of April 10, 1858, Brazleton has paid the debts of the firm, of a sufficient amount to redeem this mortgage; and this, we may say, is, in substance, the sole ground of defense relied upon in the answer; and yet, in maintaining it, it seems to us that he most signally fails.

The Court found that there was due on the notes, less the payments, $6,900.79, but that Brazleton had paid, with interest thereon, $3,513.40, leaving a balance of $3,387.39 still due plaintiff. If this is not correct, it was certainly the duty of the defendant to show its error by proof; and this evidence we are unable to find.

It is assumed that whatever may have been paid by W. P. Brazleton, in liquidation of the firm debts, was to be applied necessarily to the redemption of this mortgage We do not so understand the agreement. He had the privilege of thus applying such payments, but was not

bound to do so. Other matters of indebtedness existed between the parties. If Brazleton paid the firm debts and consented to the application of such payments to any of his other indebtedness, he cannot afterwards claim that it should go to the extinguishment of this lien. Nor will the purchaser of the property stand in any better position. The general rule is, that the debtor may direct the application. If he fails to do so, then the creditor may make it. If both fail, then the law applies it according to its own notions of justice.

In this case, under the testimony, the court below certainly allowed all the payments to which the party was entitled. If any other firm debts were paid, it was agreed and arranged that they should be applied in another way, or upon other debts; and it is too late now to change the application. Not only so, but it is not pretended that Eichelberger has paid these notes, and under the terms of the assignment and the power conferred upon the plaintiff by the agreement in relation to the dissolution and the settlement of the affairs of the firm, this property is pledged for his security, and he could properly proceed to subject it to the payment of so much of this debt as remained unredeemed in his own name. This right could not be defeated by the sale to defendant.

There is nothing to show that the lease had "terminated by the mutual consent of the parties;" and this aspect of the case, therefore, we need not notice.

The decree is                                    Affirmed.