All facts which it was the province of the jury to find were submitted to their judgment by the charge. They were to find as to whether or not the agreement to limit liability was made; also the agreement to take the freight through without change of cars; and finally as to whether or not the change occurred, and the damage resulted from it.

All these facts found for plaintiff, the conclusion of law properly followed that the defendant company was liable.

It was not requisite to charge as to any imperative necessity or reasonable cause for the company's deviation from its contract, as no proof on that subject was introduced.

We conclude, therefore, that the charge was correct under the pleadings, the proof and the law applicable to the case, and the re-hearing applied for is granted. No other ground for reversing the judgment below having been stated in the opinion heretofore delivered, except the supposed error of this charge, we adopt the report of the commissioners upon all points discussed in it, except such as are dissented from in this opinion, and the judgment below is accordingly affirmed.

AFFIRMED.

[Opinion delivered March 29, 1883.]

---

A. M. Dunman et al. v. Coleman, Mathis & Fulton.

(Case No. 1361.)

1. Mortgage — Equity.— A court of equity will sustain a contract creating a lien upon property as a mortgage, whenever it appears from the contract that the parties intended it to operate as such; and though neither the word "lien" or "mortgage" may appear in the contract, yet if from its character it is manifest that it was contemplated by the parties that the specific property should constitute a security for the performance of the obligation, equity will give effect to the intention as between the parties and purchasers with notice.

2. Practice — Death of partner.— On the death of a partner pending suit brought in the firm name, it is not necessary to make the legal representatives of the deceased partner a party.

Error from Goliad. Tried below before the Hon. H. Clay Pleasants.

F. M. Coleman, Youngs Coleman, J. M. Mathis, T. H. Mathis and George W. Fulton, representing themselves as "doing business

under the firm name and style of Coleman, Mathis & Fulton," instituted two suits against A. M. Dunman, for the recovery of eighty head of cattle or their value in the first suit, and damages, and one hundred head of cattle or their value and damages in the second. Writs of sequestration were issued in each case. The causes were consolidated, and R. L. Dunman permitted to intervene. Judgment that the plaintiffs recover from the defendants A. M. Dunman and R. L. Dunman, "the sixty-four head of cattle seized under and by virtue of the two writs of sequestration issued in these causes consolidated," etc. Before the trial Youngs Coleman died, and his death was suggested. At the trial the defendant and intervenor objected to proceeding until the representative of the deceased plaintiff was made a party; objection overruled and the ruling excepted to. The defendant and intervenor prosecuted this writ of error, and, among other grounds of error, the first and second of them assigned were: first, that the court erred in permitting the case to be tried before the representative of Youngs Coleman, deceased, was made a party to the suit; second, that the court erred in rendering judgment in favor of a part only of the plaintiffs, and in leaving the case undisposed of as between the representative of Youngs Coleman and the defendant and the intervenor.

The suits grew out of the contracts which were entered into between R. L. Dunman and Coleman & Stockley. R. L. Dunman was the owner of a stock of cattle scattered over an extensive range, and were in various marks and brands. R. L. Dunman sold to Coleman & Stockley, by bill of sale, his stock of cattle, bearing date December 1, 1877, describing the cattle by their marks and brands. The price to be paid was $30,500. Contemporaneous with the execution and delivery to Coleman & Stockley of this bill of sale, the latter executed two instruments of writing, which in effect were but one, the second one being an agreement which modified one of the stipulations of the first. The instruments provided for the payment of the $30,500, and among other stipulations for that purpose was that R. L. Dunman agreed to gather one thousand head of cattle, at his own expense, out of the entire stock of cattle belonging to Coleman & Stockley, at specified valuations according to the different ages of the cattle, and that when they were gathered and the amount known, Coleman & Stockley were to give R. L. Dunman their note for the balance due, payable on July 25, 1879. Coleman & Stockley, on the 15th day of May, 1878, conveyed by a bill of sale to the plaintiffs the entire stock of cattle purchased from Dunman. There was evidence tending to establish

the fact that two of the plaintiffs had notice of the terms of the contract of sale between Coleman & Stockley and R. L. Dunman before the plaintiffs purchased. The plaintiffs sued to recover cattle, of which they proved that sixty-four head seized by writ of sequestration were in the brand which was sold by R. L. Dunman to Coleman & Stockley, and by the latter to the plaintiffs. R. L. Dunman's answer in intervention alleged that in pursuance of the agreement in the contract of sale that he should gather a thousand head of cattle, he had gathered and had in his possession the cattle seized under these writs of sequestration prior to the time of the plaintiffs' purchase from Coleman & Stockley. The answer asserted the right under the contract he had made with Coleman & Stockley, as against the plaintiffs with notice, to continue to gather the thousand head contemplated by the contract; that he had as yet not gathered more than three hundred head. Also that if he had in fact gathered any of the cattle sued for subsequent to the date of the plaintiffs' purchase, that he was authorized to do so.

He also charged that plaintiffs have gathered and appropriated to their own use more than one thousand head of cattle out of the stock which he sold to Coleman & Stockley, and, also, all of the cattle owned by Coleman & Stockley, whereby he had been prevented from receiving the cattle to which he was entitled under his contract, and which otherwise he would have received. He alleged that the cattle were of the average value of $10.50 per head, and the stock of cattle in question were in the plaintiffs' possession; that Coleman & Stockley were insolvent, and were so when plaintiffs purchased; that the consideration of the purchase made by plaintiffs was the settlement of an antecedent indebtedness from Coleman & Stockley to themselves, and that they paid no valuable consideration. The intervenor then offered to pay to plaintiffs the expenses sustained by them in gathering the stocks which belonged to Coleman & Stockley on the 1st of December, 1877, in number sufficient with those received from stocks by himself, to make one thousand head, and prayed judgment for the cattle which were seized and replevied, with their increase, with like judgment in respect to the cattle which the intervenor had theretofore gathered and which had been appropriated by plaintiffs to their own use. He prayed that he have judgment against the plaintiffs for the value of about six hundred head of cattle, which the plaintiffs have converted to their own use, from the cattle bought by the intervenor from Coleman & Stockley, alleged to be worth $10.50 per head. The judge made a statement of his conclusions upon the facts and law in rendering judgment.

The assignment of errors presented the question as to whether R. L. Dunman had a right, under his contract with Coleman & Stockley, and the evidence of notice to the plaintiffs of the same, to gather stock from the Coleman & Stockley brands, in order to satisfy his claim to have one thousand head of cattle as part payment under his sale to them, after the date of the sale by Coleman and Stockley to the plaintiffs.

*Lackey & Kleberg*, for plaintiffs in error, cited Taylor's Evidence, sec. 339; 2 Pothier (Evans), 143, 144; 6 Tex., 54.

*Lane & Payne*, for defendants in error.

WALKER, P. J. COM. APP.— The findings of fact by the judge are warranted by the evidence; there was evidence tending to establish the several conclusions drawn by him, and they are entitled to the same consideration as would be the verdict of a jury. Among the facts thus found was that the intervenor, Dunman, had failed to prove that any of the cattle which were seized by the writs of sequestration had been gathered and reduced to possession by said Dunman before the date of the sale to the plaintiffs. The court detemined, as a matter of legal construction of the contract between Coleman & Stockley and Dunman, that whatever rights to gather the one thousand head of cattle belonged to Dunman under it were derived from it as being an executory contract which empowered him to proceed and gather the cattle according to the terms which it provided, but that it was neither a mortgage nor was it a sale. We are of the opinion that this construction of the contract is not the true one, and that when it is interpreted under the light of the circumstances which attended the making of it, it must be held in legal effect to be a mortgage. The instruments of writing which evidence the obligation of Coleman & Stockley to pay Dunman for the stock of cattle were counterparts of the bill of sale, which conveyed title to those purchasers, and they will be construed together as if they all formed a single instrument. And the purpose of the instruments of writing held by Dunman was to provide for payment of the price agreed on; and perhaps it may be inferred that Coleman & Stockley meant not only to secure Dunman thereby, but also to provide against creating a moneyed obligation on the purchase they were making to the extent of the values of the one thousand head to be gathered by Dunman, and also in that mode to cause to have gathered of their cattle, free of expense to themselves, and to appropriate by a sale to Dunman at a satisfactory price,

certain portions of their marketable stock. The instrument of writing recited the acknowledgment of payment of $7,250 by a bill of sale to a lot of cattle in the counties of La Salle and McMullen to the number of a thousand head, more or less, and then provided for assuming the payment of unpaid claims on the beef books of Dunman, and recites thus: "Furthermore, R. L. Dunman then agrees to gather one thousand head of cattle at his own expense, in the Mission Prairie" (which limitation as to place was by another instrument altered so as to embrace all cattle belonging to the said Coleman & Stockley), said cattle to be gathered "at the following rates, to wit: yearlings, mixed (half and half), $6; cows and calves, $12; two years old, mixed (equal numbers), $9; dry cows, $10; three years old, beeves, $13.50," etc.

The terms used allow, we think, the construction that Coleman & Stockley conveyed the title to a thousand head of their cattle as a charge upon their entire stock, as a security for the purchase money to be paid to Dunman. The whole stock thereby is not chargeable with the entire unpaid purchase price, but with no more than the value of one thousand head of cattle. The right conferred on Dunman to gather the thousand head may be assimilated to the duties and powers of a trustee in a deed of trust, or of a mortgagee with power to sell; he may execute in his own favor the contract thus intended to pay him for his property, and the terms and stipulations as to prices for the cattle thus gathered are duly provided for. If the mortgagee, Dunman, from any cause, could not execute the contract specifically, undoubtedly a court of equity would give proper effect to the instruments of writing, as an equitable mortgage, and afford proper and necessary relief to the vendor.

"A court of equity will recognize and sustain a contract creating a lien upon property as a mortgage whenever it appears from the contract that the parties intended it to operate as such." Jones on Chattel Mortgages, sec. 12. See Whiting v. Eichelberger, 16 Iowa, 422. Although the language of the contract does not in terms or words express that a "lien" is given, or that Coleman & Stockley convey or "mortgage," or employ like expressions to indicate the creation of a lien upon the stock of cattle, yet we think that the contract allows of the construction that the permission given and agreement made, that Dunman shall gather one thousand head of cattle from the entire stock, is, in fact, intended to, and does, subject the said stock to a lien and a charge as clearly as though it were so expressed. See sec. 13, Jones on Chattel Mortgages, and authorities there cited. See, also, section 14, id., and

note 6.   Several cases are quoted in sections 13 and 14 of Jones on Chattel Mortgages which illustrate the principle on which we act in determining this contract to be a mortgage.   Thus a manufacturer having purchased wool and paid for it by his note indorsed by another for his accommodation, executed at the time of such purchase, a writing, reciting that the note was indorsed for the purpose of enabling him to purchase the wool, and declaring that the wool and the cloth to be made therefrom should belong to such indorser until the note should be paid; held to be a mortgage. Thompson v. Blanchard, 4 N. Y., 303; and see Atwater v. Mower, 10 Vt., 75; Caty v. Barnes, 20 Vt., 78; Moore v. Murdock, 26 Cal., 514.   The court found that one of the plaintiffs had notice before their purchase of the contract under which Dunman claimed a right to gather stock, and the firm being thereby bound by such notice, we conclude that for the erroneous construction given to the contract relied on by Dunman, the judgment ought to be reversed. The first and second assignments of error are not well taken.   The plaintiffs sufficiently appeared from the petition to sue as partners. There was no exception, and the terms used, "firm," "name and style," ordinarily apply to associations known as partnerships.

The court treated the suit as being brought by the plaintiffs in the capacity of copartners, and therefore it was not necessary, on the death of one of them, to require his legal representative to be made a party.   Because the intervenor had filed a plea in reconvention for damages, would not require the rule just stated to be varied, if it appeared from the record that the liability of the plaintiffs, if any, was a partnership transaction for which the partnership effects were liable; nor would the legal representative be cited if it appeared that the grounds alleged for reconvention did not arise out of the transactions and grounds of action set forth by the plaintiffs.   It is not clearly shown that the court improperly refused to delay the trial in order that the representatives of Youngs Coleman, deceased, might be made a party.   We conclude that the judgment ought to be reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion approved March 30, 1883.]

Associate Justice STAYTON did not sit in this case.