BROUSSARD et al. v. LE BLANC et al. (No. 44.)

(Court of Civil Appeals of Texas. Beaumont. Dec. 16, 1915. Rehearing Denied Jan. 20, 1916.)

1. APPEAL AND ERROR ☞931—PRESUMPTIONS —FINDINGS.

Where the record does not show that findings of fact and conclusions of law were not requested, it will, such findings and conclusions having been filed, be presumed that they were requested.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3728, 3762-3771; Dec. Dig. ☞931.]

2. APPEAL AND ERROR ☞230 — GROUNDS OF REVIEW — PRESENTATION BELOW — NECESSITY.

Where, after findings of fact and conclusions of law were filed, exception was taken and notice of appeal given, and appellant after the adjournment of the term filed a paper complaining that there was no request for such findings and conclusions, and protesting against inclusion in the transcript, but no action was taken upon such paper, appellant is not in a position to complain on appeal of the filing of the·findings and conclusions.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. ☞230.]

3. PARTNERSHIP ☞203—ACTION BY FIRM — DEATH OF PARTNER.

Where a sum of money was paid over by one member of a firm with the consent of the others, an action to recover the same does not abate on the death of one of the partners, and judgment is valid, though neither his heirs nor legal representatives were made parties.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. § 375; Dec. Dig. ☞203.]

4. APPEAL AND ERROR ☞1008 — REVIEW — FINDINGS.

The appellate court will defer to findings of fact by the trial judge, who heard the evidence and saw the witnesses.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3955-3960, 3962-3969; Dec. Dig. ☞1008.]

5. BANKRUPTCY ☞296 — TRUSTEES — RIGHTS OF.

Where a partner was a trustee in bankruptcy of a debtor to his firm, and his copartners secured an injunction in a state court against his delivery to his successor of alleged partnership funds received by the trustee, from the possession of the bankrupt, the funds, having been turned over to the successor without notice of the injunction, are no longer subject to the jurisdiction of the state court.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 414; Dec. Dig. ☞296.]

6. APPEAL AND ERROR ☞544—RECORD—EXCEPTIONS, BILL OF.

Where alleged improper argument was not preserved by bill of exceptions, and only the pleadings containing reflections on appellants

were before the appellate court, the matter cannot be reviewed on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2412–2415, 2417–2420, 2422–2426, 2428, 2478, 2479; Dec. Dig. ☞ 544.]

7. LIMITATION OF ACTIONS ☞138—RUNNING OF STATUTE—EFFECT.

Where plaintiffs resorted to action in the state court, instead of the federal court, in a cause of action arising out of bankruptcy proceedings, they could not complain, having been defeated in the prosecution of the action in the state court, that because of the time consumed limitations against an action in the federal courts had run.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. § 573; Dec. Dig. ☞ 138.]

8. APPEAL AND ERROR ☞931 — REVIEW — PRESUMPTIONS.

Though, in an action tried to the court, incompetent evidence was received, it will be presumed that the trial judge was not affected by such evidence.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3728, 3762–3771; Dec. Dig. ☞931.]

Appeal from District Court, Jefferson County; Robert G. Street, Judge.

Action by J. E. Broussard and others against E. J. Le Blanc and others. From a judgment for defendants, plaintiffs appeal. Affirmed.

Lipscomb & Lipscomb, of Beaumont, for appellants. U. F. Short, of Dallas, Spotts & Matthews, of Houston, and Smith, Crawford & Sonfield, of Beaumont, for appellees.

BROOKE, J. [1] At the outset in this case we are confronted with a motion filed by the appellants to strike from the transcript in this cause the findings of fact and conclusions of law, for the reason, as alleged, that no findings of fact nor conclusions of law were requested of the trial court, in fact, or by any manner that appears of record, and that said document has no place in the transcript of these proceedings, and that said findings of fact and conclusions of law do not fairly represent the facts adduced. There seems to be some uncertainty in the decisions of this state with reference to the matter complained of, and a brief review of a few of same will therefore be necessary.

In the case of Otto et al. v. Halff et al., 32 S. W. 1053, it was said:

"Appellants contend, among other things, that the conclusions of fact filed by the trial judge should not be given any effect, because they were filed without having been requested by either party. There is no force in this point, as it does not affirmatively appear by the record that such was the case; the only suggestion of it being in a motion to strike out the conclusions, which was overruled, perhaps for the reason that a request had been made. We might well presume, from the filing of the conclusions, that a request therefor had been made."

In the case of Riggins v. Trickey, 102 S. W. 918, it is said:

"While it may be that under the provisions of article 1333, R. S. 1895, the trial court has no authority to file his conclusions of fact and law, without being requested to do so by one of the parties, and the same should not be considered, still, in the absence of a showing in the record that he was not requested to file such conclusions, the presumption will be indulged that the court filed the conclusions of fact and law, because he was requested so to do. This is said, for the reason that it is the contention of appellee that there was no request to file the conclusions of fact and law, and therefore they should not be considered."

In the case of Le Blanc v. Jackson, 161 S. W. 62, the following language is used:

"The trial court filed and had incorporated in the record conclusions of fact and law, but there was no request by any party therefor, so far as is shown by the record. The exact status of such findings has not been, so far as we have been able to find, fixed by the courts. It was held by this court in City of Houston v. Kapner [43 Tex. Civ. App. 507] 95 S. W. 1103, in considering an objection to the consideration of such conclusions, on the ground that, 'when such conclusions are voluntarily filed by the judge, neither party is required to take notice of them, and no exception to the conclusions, nor assignments predicating error on the findings of fact therein contained, are required of the parties against whom such findings are made, to entitle them to attack the judgment on the ground that it is unsupported by the evidence. * * * The question of whether such conclusions can be considered by the appellate court is not presented, and we do not feel called upon to decide it."

Objection is also made by appellees to the consideration of the motion in the instant case, for the reason that it was filed more than 30 days after the filing of the transcript, and that it comes too late, under rule 8 of the Courts of Civil Appeals (142 S. W. xi). The transcript in this case was filed on June 21, 1915. The motion to strike out the findings of fact and conclusions of law was filed on November 15, 1915. Rule 8 for the governing of Courts of Civil Appeals is as follows:

"All motions relating to informalities in the manner of bringing a case into court, shall be filed and entered by the clerk on the motion docket within thirty days after the filing of the transcript in the Court of Civil Appeals; otherwise the objection shall be considered as waived, if it can be waived by the party."

Even if the motion be conceded to have been filed too late, and for that reason could not properly be considered by this court, we are of the opinion, from the authorities, that the conclusions of fact found by the trial court in this case must necessarily be considered. The presumption obtains always that when conclusions of fact are found in the record filed in the proper time by the trial court, as in the present case, the same were requested, in the absence of an affirmative showing *made at the time* that the same were not requested by either party to the suit.

[2] This record shows that the conclusions of fact were filed on the 26th day of March, 1915, and it appears from the record that no objection was made that they were not requested, but on the contrary, that exception

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

was taken and notice of appeal given, and the record shows it was not brought affirmatively to the notice of the trial court in any way, and that no action was taken thereon during said term of court; but after the adjournment of said court, and on the 26th day of May, 1915, the plaintiffs in the lower court filed a paper, and used the following language:

"Now come the plaintiffs, and except to the findings of fact and conclusions of law, and say they are distinctly unfair, and filed without the request of anybody made in open court, and without any request from plaintiffs, or their attorneys, and plaintiffs protest against having said document included in the transcript." Signed by counsel.

No action was taken, so far as the record shows, upon the filing of this paper, which was not shown to and no issue was made in the lower court in the proper time, if it be true, as complained of by appellants, that the conclusions were not requested, but the court was permitted to adjourn without such objections having been made as to such conclusions having been filed without request. We are of opinion that appellants are not in a position to complain, and we are further of the opinion that in this case, as in all others, the presumption must be indulged that the findings of fact were requested; the record not affirmatively showing by action at the time that no such request was made. Therefore the motion to strike out the findings of fact and conclusions of law will be overruled.

In the month of June, 1906, Moore & Bridgman, a firm composed of E. F. Moore and F. W. Bridgman, who were engaged in rice farming in the county of Jefferson and state of Texas, became insolvent. The property was incumbered by mortgages to the appellees and to the Houston Rice Mills. They were indebted to other creditors, whose debts were unsecured. A portion of their property had been removed from Jefferson county, Tex., where their business was conducted, to the state of Louisiana, and there attached by the Parlan & Orendorf Company, who is one of their creditors. On the 16th day of June, 1906, they filed in the United States District Court for the Eastern District of Texas, at Beaumont, their voluntary petition in bankruptcy, and were on the 26th day of said month adjudged bankrupts. Appellants were scheduled as creditors holding a claim partially secured for the sum of $9,000. E. J. Le Blanc, one of the partners in appellants' firm, was appointed trustee, and qualified as such, giving a bond in the sum of $5,000, which was subsequently increased to $20,000, with J. E. Broussard, the partner holding the largest interest in appellants' firm, as surety. The bankrupts were cultivating two farms in Jefferson county at the time their petition was filed—one containing 1,100 acres, known as the Stengle farm; and the other containing 290 acres, known as the McCrimmin farm. Crops of rice were growing on each.

They owned a lot of teams, agricultural implements, and other personal property, which were used in cultivating these lands. The crops grown on the Stengle farm, the teams, implements, and other personal property were scheduled as assets. The crop of rice grown on the McCrimmin tract was withheld therefrom. Complaint was made by the creditors of this omission. Thereupon the trustee undertook to resign, accompanying his resignation with a statement of his account. Creditors opposed the trustee's resignation, and denied the account which accompanied it. They charged that Moore & Bridgman were the owners of the McCrimmin rice, and were in possession of the same when they were adjudged bankrupt. That it was delivered to Le Blanc, trustee, when he was appointed and qualified as such, and that he took possession of it as their property. The account of the trustee was denied, and it was alleged that it was grossly exaggerated; that the bankrupts and their families had been put upon the pay rolls at extravagant salaries, when they performed little service; and that the estate had been administered for their accommodation and benefit of the bankrupts in the appellant partnership.

Le Blanc filed his reply. He alleged the Beaumont Rice Mills were owners of the McCrimmin rice, and that the bankrupts were in possession of it as the representatives of the owners. The facts constituting the alleged ownership are pleaded. Appellants, in the name of Le Blanc, insisted that the referee was without jurisdiction to determine the matters in controversy between the creditors and the trustees. Their objections to the jurisdiction were sustained by the referee. Upon his petition for review his conclusions were overruled, and the contention of the creditors sustained. It was held by the United States District Court that the property in controversy belonged to the bankrupts; that as such it came into the possession of Le Blanc, and said trustee was directed to account for the same in the administration of their estates and to pay the value thereof, and deposit to the credit of Moore & Bridgman the value of said rice. The trustee appealed from the decision of the District Court, and at the same time filed his petition for review. Each was heard in the Circuit Court of Appeals at New Orleans on the 4th day of January, 1909, and the judgment of the trial court was affirmed. Upon a return of the mandate to the trial court, creditors filed their petitions for an order upon the trustee to show cause why he failed to comply with the order of the court to account for the fund found to have been in his possession and pay the same into court; *that he should be fined for contempt, and committed unless such payment was made.* Thereupon appellants began the present action to prevent their copartner, Le Blanc, from withdrawing the funds of the partnership to pay

the sum which he has been directed to pay by the United States District Court. A temporary restraining order was granted, and thereafter made known to the federal court by Le Blanc, who sought to be relieved of the necessity of violating the order which he claimed he would have to violate if he brought into court the sum required by the federal court, since he claimed the money in question had been taken and appropriated by his firm, and he had no other source for obtaining it, and he suggested that issues had been tendered in the state court and the fund actually deposited there by his firm, and prayed that the order of the federal court be so modified as to admit of his merely accounting for the fund as part of the estate, and being discharged, leaving his ownership and right of custody to be tested by plenary trial. The federal court denied his application for modification, and notified him that he would be immediately committed unless he produced the fund. He thereupon took the fund of about $13,000 and placed it in the federal clerk's hands. At the same time he was dismissed as trustee, and appellee W. J. Crawford was appointed in his stead.

The plaintiffs in this suit gave notice to the clerk of the federal court and also to Crawford and the Gulf National Bank, as a depository for the bankruptcy funds, that the fund in question was taken in violation of the injunction issued by the state court in this cause, and thereafter said Crawford and the bank were made parties hereto by supplemental bill, and they filed their exceptions, pleas, and answers. Later the federal District Court enjoined prosecution of this suit against them. There was an appeal therefrom to the Supreme Court of the United States, which reversed them both, holding that the state court had a right to enjoin against taking the partnership funds, and to try the question of whether Crawford had notice, when he received the funds, of their having been taken in violation of the state court's injunction.

On the trial of the case in the state district court judgment was rendered generally against plaintiffs, that they take nothing and pay all costs. The plaintiffs filed and urged their motion for new trial, which was overruled, to which they excepted and gave notice of appeal. Later the plaintiffs filed and urged a second motion for new trial, and to reconsider, showing that one of the copartners interested in the suit between the partners was dead at the time of the trial, and that neither his heirs nor legal representatives had been made parties, and urged this, among other grounds, why the judgment ought to be set aside. This motion was also overruled, and exception reserved, and notice of appeal given, and the case was brought to this court in due course.

The court trying the case filed the following findings of fact, which of necessity must be incorporated in the opinion, to wit:

182 S.W.—6

"(1) On the 16th day of July, 1906, Moore & Bridgman, a firm composed of E. F. Moore and F. W. Bridgman, filed a voluntary petition in bankruptcy in the United States District Court for the Eastern District of Texas at Beaumont, and were on the 25th day of said month adjudged bankrupts.

"(2) The Beaumont Rice Mills, a partnership composed of plaintiffs, J. M. Hebert, D. C. Hebert, L. C. Hamshire, J. A. Bordages, J. E. Broussard, and the defendant, E. J. Le Blanc, were at that time, and for a long time had been, conducting a rice milling business in Beaumont, and were scheduled as a creditor of said bankrupts to the amount of $9,000.

"(3) The bankrupts had raised and cultivated a crop of rice on a tract of land containing 280 acres of leased land known as the McCrimmin farm. The crop growing thereon was not scheduled as the property of the bankrupts.

"(4) The defendant E. J. Le Blanc was appointed trustee by the referee in bankruptcy, and duly qualified as such by giving bond in the sum of $5,000, and otherwise complying with the order appointing him, and took charge of the estate of said bankrupt.

"(5) After remaining in possession of the property of the bankrupts for a time, complaint was made by the creditors that no inventory had been filed and that the bond he had given was insufficient. He thereupon undertook to resign his trust, and tendered his resignation in writing, accompanied by an account of his administration of said estate. Objection was made to his account, creditors maintaining that the rice grown upon the McCrimmin land, amounting to 3,583 sacks and of the value of $11,542.25, was the property of the bankrupts, that it had come into his possession as trustee, and that he should be charged with its value.

"(6) The claim by the creditors was resisted on the ground that the bankrupts had sold the rice to the Beaumont Rice Mills in payment of their indebtedness to said mills and that it had been delivered to said Beaumont Rice Mills and was no part of the estate of the bankrupts. It was further insisted that the referee was without jurisdiction to determine the matters in controversy.

"(7) Upon a trial before the referee the objection urged to the jurisdiction by the trustee was sustained and the action of the creditors dismissed.

"(8) Upon a petition for review the judgment of the referee was reversed, and the rice in controversy held to be the property of the bankrupts; that it was of the value of $11,642.25, and the trustee was held to account in that sum, and ordered to pay the same into court.

"(9) From this action the trustee appealed to the Circuit Court of Appeals, and also filed his petition for review. Upon hearing in the Circuit Court of Appeals, judgment of the trial court was affirmed, and the liability of the trustee for the value of the rice finally established.

"(10) Upon the return of the mandate, the trustee not having complied with the order directing the payment of said sum of money, the creditors applied for order to show cause why he should not be committed for contempt. From the hearing of said application the trustee was directed to pay forthwith or be committed for contempt.

"(11) Whilst acting as trustee for the estate of the bankrupts, defendant, Le Blanc's account as such was kept upon the books of the Beaumont Rice Mills on all of his transactions in connection with that estate.

"(12) At the time this suit was brought, the defendant Le Blanc had never threatened to take the sum necessary to comply with the court's order from the funds of the Beaumont Rice Mills. His copartners, the plaintiffs in this case, never forbade him to take such funds for that purpose. Neither of them ever notified the bank in which said funds were deposited

to decline the payment of a check drawn for that purpose.

"(13) On the 12th day of April, 1909, the judgment of the District Court against the trustee was satisfied by the payment in cash of $13,130.50, being the amount of the judgment against Le Blanc, with interest, obtained from the bank upon a check drawn in the name of the Beaumont Rice Mills by E. J. Le Blanc, and his account as trustee of Moore & Bridgman, bankrupts, on the books of the Beaumont Rice Mills, is charged with that sum. This entry was made upon the books with the consent of all plaintiffs in this case. Neither the deputy clerk of the court, to whom the money was paid directly, nor the substitute trustee, to whom he turned it over, were notified that it was partnership funds until after the money had been actually applied in payment of the judgment.

"(14) The court finds from all the evidence in the case that said judgment was paid by the Beaumont Rice Mills with the knowledge and consent of all plaintiffs in this case, and that it was paid willingly; that the plaintiffs intended by the filing of this action to attempt to recover the sum paid by them for the value of the rice to comply with the order of the court for their copartner, Le Blanc, and not for the purpose, alleged in the petition, of preventing their copartner, Le Blanc, from depleting their funds, by withdrawing said sum over alleged objections, which they never made. The pounding was not in good faith.

"Conclusions of Law.

"The court concludes that the plaintiffs are not entitled to any recovery from the facts in this case, and that their application for an injunction should be denied, and the cause dismissed, to which findings both of fact and law the plaintiffs except.

"Robert G. Street,
"Judge 58th District Court, Presiding by Exchange of District.

[3, 4] Appellants' first assignment of error assails the action of the lower court in proceeding to judgment in this case without having new parties in place of plaintiff L. Hamshire, deceased, before it. The judgment herein rendered, they say, is void because at the time of its rendition the plaintiff L. Hamshire a necessary party, was dead, and neither his heirs nor legal representatives were made parties. There was no suggestion made in the lower court of the death of Hamshire; appellants alleging that it had been overlooked. The cause was tried on the 3d day of February, 1915, and it was not until the 20th day of March, 1915, that plaintiff filed a motion to set aside the judgment, because of the fact of the alleged death of Hamshire. We understand the law to be that, in a suit by partners for the benefit of the partnership to preserve and protect its property, if one dies pending the action, the suit does not abate, but the right to prosecute the action survives, and the surviving partners may proceed with the action. Dunman v. Coleman, 59 Tex. 199; Gunter v. Jarvis, 25 Tex. 582; Blackman v. Green, 17 Tex. 222; Thomas et al. v. Greene County, 159 Fed. 343, 89 C. C. A. 405; Sweetser v. Fox, 43 Utah, 40, 134 Pac. 599; Northness v. Hillestad, 87 Minn. 304, 91 N. W. 1112; O'Shea v. Kavanaugh, 65 Neb. 639, 91 N. W. 578; Bond v. Hilton, 51 N. C. 180; Moore v. Terhune, 161 Ill. App.

155; Robinson v. Pikeville Bank, 56 S. W. 660; Hathaway v. Stone, 215 Mass. 212, 102 N. E. 461.

A different case would have been presented if it had been shown that Le Blanc, a partner in appellants' firm, was about to take partnership funds and apply the same to the payment of his own individual debt, over the objection of appellants, and without their consent; but from the findings of fact made by the court below, which we feel obliged to consider, the money was taken with their consent, and without objection on the part of appellants. The court, in its findings, as above set out, says that from all the evidence the judgment was paid by the Beaumont Rice Mills, with the knowledge and consent of all the plaintiffs in this case, and that it was paid willingly, and that the plaintiffs intended, by the filing of this action, to attempt to recover the sum paid by them for the value of the rice, and not for the purpose, alleged in the petition, of preventing their copartner, Le Blanc, from depleting their funds by withdrawing said sum, over alleged objections, which they never made.

The trial court was in a better position, having heard the testimony, and the case being tried before the court, to judge of these matters, and we are not disposed to disturb his finding. The appellants' first assignment is therefore overruled.

[5] The appellants' second assignment of error is is follows:

"The decision of the Supreme Court of the United States, made a part of the evidence in this cause, showed that the temporary injunction issued herein by Judge Hightower was properly ordered and issued, and that the only inquiry necessary to be made in this cause was whether the trustee, Crawford, at the time of his receiving the fund in question, took it with notice that it was by way of violation of the state court's injunction, and the court has erred in upholding him and other federal court officers in such violation of the temporary injunction issued under the order of Judge Hightower herein, since the evidence shows that not only Crawford had such notice, but that the federal court officers concerned in the evasion of this court's jurisdiction had notice of the existence of this court's jurisdiction and had notice of the existence of said injunction and its bearing upon this case."

The trial court found that:

"Neither the deputy clerk of the court, to whom the money was paid directly, nor the substitute trustee [Crawford], to whom he turned it over, were notified that it was partnership funds until after the money had been actually applied in payment of the judgment."

The trial court having found that notice had not been given until after the money had been actually applied in payment of the judgment, and, as said before, it having heard the testimony in the case and passed upon the credibility of the witnesses, we are not inclined to disturb its findings on this point. Therefore we overrule appellants' second assignment.

Appellants' third assignment claims that the evidence shows that, when the fund in

question came into the hands of the several defendants, it was partnership funds of plaintiffs and defendant Le Blanc, under the protection of a temporary restraining order then issued by the direction of Judge L. B. Hightower, Jr., then judge of the court, and that, before any steps were taken in the administration of same by the federal court officers, all of them were fully apprised of the violation of the state court injunction involved in their receipt of the funds, and that it was clearly their duty forthwith to restore said fund to plaintiffs' partnership funds, and that it was error in this court not to so order.

This is practically the same as the second assignment of error, and, as above said, the court below having found that the money was not received with notice until it had been actually applied in payment of the judgment, what has been said above will apply to this assignment, and it is therefore overruled.

[6] Appellants, by their fourth assignment of error, challenge the action of the lower court in permitting impertinent reflections against plaintiffs to be made on the trial, involving charges of fraud, given utterance to in pleadings and remarks of counsel for creditors of the bankrupts, and in documents presented by them and introduced in evidence by counsel for defendants, Crawford, and the creditors of the bankrupts, and not supported by the evidence.

There is no bill of exceptions in the record to the introduction of illegal testimony or impertinent reflections, and it is presumed that, if such were made, objection would have to be promptly taken, and a bill of exceptions would be before this court complaining of such action, and showing the language used and wherein the same was incompetent. In the absence of a bill, we cannot say from the record before us, which only contains the written pleadings, and does not contain remarks of counsel, that no such impropriety was indulged as would cause this court to reverse this cause. The said assignment is therefore overruled.

[7] The appellants, in their fifth assignment of error, claim that the court erred in refusing to require defendants to restore the fund taken in violation of the temporary injunction, for this: That the ruling, if upheld, would result in these plaintiffs having to prosecute in the federal court a new suit, which is probably barred by limitation, whereas the trustee in bankruptcy could assert his and the creditors' equities, if any, in the fund by suit in the federal court, without fear of the bar of limitation, since it has been held that such a suit by the trustee would not be barred or affected by limitation statutes.

The court that tried the case, having before it the testimony of the transactions which resulted in the producing and with-drawal of this fund, found that the money was voluntarily paid, and in refusing to require the defendants to restore the fund we cannot say such action was without warrant, and the *result* of the action of the lower court in so refusing is not thought to be a proper subject for investigation, as we have only to deal with the case as presented to us, and as shown by the record; but it may be said that when a right is claimed to be violated, and a remedy is resorted to, the party would not have cause to complain that in the attempted enforcement of the remedy time has been consumed covering the period of limitation for a different remedy. The fifth assignment is therefore overruled.

Their sixth assignment of error complains that the court erred in rendering judgment against the plaintiff, and they say that under the evidence the fund in question was manifestly taken from the funds of the plaintiffs' partnership in violation of the order of this court, and that at the time it was delivered to the trustee in bankruptcy, and that at each step from the time it was wrongfully withdrawn from said funds the defendant W. J. Crawford, and all those through whom it passed to his custody, had notice that said fund had been taken by defendant Le Blanc in violation of this court's order.

The findings of the lower court are against appellant on this question, and we do not feel, in view of all the facts, which were gone into at length and considered by the lower court, that we would be justified in holding that the court committed error in this respect. The case seems to have been fully developed, and while incompetent and irrelevant matters, perhaps, were introduced in evidence, it was being tried before the court, and in the consideration of the whole case the court, perhaps, was justified in its finding.

[8] We feel confident that the trial court, who heard the evidence in its entirety, and whose province it was to pass upon the evidence, did not allow improper evidence to influence his action, and thus his findings, and we cannot say from this record that the case was not properly disposed of by the lower court.

The sixth assignment is therefore overruled, and the judgment of the lower court is in all things affirmed.

CONLEY, C. J., recused.