THE FIRST NATIONAL BANK OF STEWART V.
HOLLINSWORTH.

1. **Homestead**: OCCUPANCY NECESSARY. There must be actual occu. pancy of property in order to give it the homestead character- The improvement of property with the design to occupy it as a homestead is not sufficient. (See opinion for citations.)

2. **Application of Payments**: OPEN ACCOUNTS. In the argument of this case, the rule is recognized that payments upon an open, running account, when no special application thereof has been directed by the debtor or made by the creditor, will be applied by the law to the extinguishment of the items in the order of their dates. (See opinion for citations.)

3. ———: ON NOTE GIVEN FOR SEVERAL PRIOR LOANS : PRESERVATION OF SECURITY : HOMESTEAD PROTECTED. After defendant had acquired a homestead he gave to plaintiff his note for five thousand dollars in consideration of several loans previously made, the first of which was for fifteen hundred dollars, which was made before he acquired the homestead. He afterwards made payments amounting to $1,833.96. but made no direction as to their application, and no special application thereof was made by the plaintiff, nor were they endorsed on the note. In view of the evident purpose of the law to protect the homestead, *held* that the payments should be so applied as to cancel the fifteen hundred dollars indebtedness which might otherwise be a lien on the homestead. The rule that the law will so apply payments as to preserve to the creditor his security, and enable him to collect his entire debt, does not apply in such a case, because (1) the liability of the homestead for debt is not a "security" within the meaning of the rule ; and (2) the rule is not universal, but is to be applied with reference to other rules of law and considerations of equity.

4. **Homesteads**: LIABILITY FOR DEBT : EXTRAVAGANT COST OF. In the absence of any evidence of fraud or design to cheat in the improvement of a homestead, the amount of money expended thereon cannot be considered in determining whether it should be held liable for the debts of the owner.

*Appeal from Guthrie District Court.*—HON. O. B.
AYRES, Judge.

FILED, OCTOBER 21, 1889.

ACTION to subject certain premises claimed as a homestead to the payment of a judgment. There was judgment for defendant, and the plaintiff appeals.

| 78 | 575 |
| 84 | 710 |
| 78 | 575 |
| 93 | 112 |
| 78 | 575 |
| 105 | 218 |
| 78 | 575 |
| 108 | 462 |
| 78 | 575 |
| 114 | 234 |
| 78 | 575 |
| 130 | 687 |

The First Nat. Bk. of Stewart v. Hollinsworth.

*Fogg & Hinkson*, for appellant.

*Applegate & Brown*, for appellee.

GRANGER, J.—On the sixteenth of February, 1887, the plaintiff obtained a judgment against the defendant for $3,542.83 on an unpaid balance of a promissory note for five thousand dollars, dated June 16, 1886. The consideration for the five-thousand-dollar note was made up in part of prior loans, the earliest of which was fifteen hundred dollars, loaned May 5, 1883. Prior to the entry of the judgment, there had been paid on the five-thousand-dollar note $1,833.96, but no application of such payments had been made by endorsements. The defendant for years prior to May 5, 1883, had owned and occupied a homestead in Guthrie county, and during the season of 1882 and 1883 he built his present homestead, and moved into it in October of the latter year, from the old homestead.

I. The case deals, to some extent, with the question as to when the homestead character attached to the new house, the point of contention

1. HOMESTEAD: occupancy necessary.

being as to its having that character on May 5, 1883, when the fifteen hundred dollars was loaned. The record discloses that the house and barn were enclosed in 1882; that some stock was kept on the place, and other facts on which appellee bases the homestead character ; but to our minds there was not, prior to October, 1883, a change of homesteads. It is true, the premises were being improved with a design to use them for a homestead ; but something more than the improvement of property with such a design is necessary to give it the homestead character. The occupancy disclosed in the record is entirely consistent, or might be, with a purpose to retain the old homestead, and merely improve the premises in question. The facts do not bring the case within any of the cases defining actual occupancy. There must be actual occupancy, to give the homestead character. *Givens v. Dewey*, 47 Iowa, 414 ; *Elston v. Robinson*, 23 Iowa, 208;. *Charless v. Lamberson*, 1 Iowa, 435.

II.  With the fact established as to when the homestead character attached, it is a question of the liability of the homestead for any part of the judgment.  This branch of the case incidentally involves a question of the application of payments.  There is no claim that any part of the debt represented in the judgment was contracted prior to the occupancy of the homestead, except the fifteen hundred dollars loaned May 5, 1883 ; and, conceding that without any payments the homestead would be liable for as much of the judgment as represented the indebtedness contracted before the homestead character attached, the question is presented as to how the payments aggregating $1,833.96, made before judgment, shall be applied.  If it is to be applied to the part of the note representing the fifteen hundred dollars of May 5, then the judgment represents no indebtedness contracted before the property in question became a homestead ; but if, as claimed, it should be applied to the other part of the indebtedness represented by the note, then the judgment would represent an indebtedness contracted before the property was a homestead.  It is conceded that no special application of payments was directed by the defendant, nor was any such application made by the plaintiff.  The money was received and passed to the credit of the defendant without even endorsement on the note.  The case presents the question of what application the law will make, under the circumstances of the case.  The authorities furnish different rules as applicable to cases controlled by different circumstances.  It is contended by appellee that the rule governing payments on an open, running account should apply, which is that the payments are to be applied to the extinguishment of the items in the order of their dates ; and the rule is fully supported by authority.  *Field v. Holland*, 6 Cranch, 8; *Schuelenburg v. Martin*, 2 Fed. Rep. 747 ; *Pardee v. Markle*, 111 Pa. St. 551; 5 Atl. Rep. 36; *Mack v. Adler*, 22 Fed. Rep. 570; *Hersey v. Bennett*, 28 Minn. 86 ; *Hannon v. Englemann*,

*2. APPLICATION of payments: open accounts.* [margin note]

49 Wis. 278. In fact, it is doubtful if any authority can be found contravening the proposed rule. We think, however, that the rule is not applicable to the case at bar, as, under the authorities cited, the rule is applicable only to open accounts ; and, if there was ever a strictly open account between these parties to which the rule would apply, it had been settled by the note in question, after which the payments were made. The different transactions between the parties, giving rise to the different items of indebtedness which finally culminated in the note in question, were loans upon notes in such manner that we incline to the view that they were "distinct debts," rather than being items of an open account.

III. Viewing the items of indebtedness which made up the aggregate of the five-thousand-dollar note as above stated, we are led to the rule of the application of payment under that state of facts. If the items of indebtedness had continued as separately evidenced before the five-thousand-dollar note was given, the defendant, in making the payments, had a right to elect on which it should apply. If he failed to do this, the plaintiff could make the application. If neither made the application, "then the law applies it according to its own notions of justice." *Whiting v. Eichelberger*, 16 Iowa, 422. This rule has abundant support in authorities before cited, as well as many others. Neither the quite elaborate briefs of counsel on this branch of the case, nor our own research, have brought to our notice a case in which, after distinct debts are so united as to be evidenced by a single note, an application of payments not endorsed on the note was sought as to a distinct part of the debt; and as the interest of both parties in this case lead to the discussion of the question of such particular application rather than to an application generally, and governed somewhat by the fact that on the question of general application, without any reference to particular parts of the debt, we desire to be better informed by

arguments and briefs directed to that question, we dispose of the case on the line of arguments presented, and in so doing we leave undecided the question if the application should be general. A case in which some light is given, where the application is made by endorsement, is *Sheldon v. Bennett*, 44 Mich. 634; 7 N. W. Rep. 223. Appellant's view of the case is that, inasmuch as neither party has directed the application, it is to be made under the rules of law applicable to such failure; and, as fixing the duty of the court under that rule, it claims that the application should be so made as to preserve to plaintiff its security, and best enable it to collect its entire debt; and, to that end, if any part of the debt is unsecured, the payment should be applied to the unsecured part, and, if all is secured, then the payment should be applied to the part where the security is most precarious. The rule, with a slight modification, has strong support on authority. *Leeds v. Gifford*, 5 Atl. Rep. (N. J.) 795; *Hersey v. Bennett*, 28 Minn. 86; 9 N. W. Rep. 590; *Coons v. Tome*, 9 Fed. Rep. 532; *Schuelenburg v. Martin*, 2 Fed. Rep. 747; *Sanborn v. Stark*, 31 Fed. Rep. 18; *Field v. Holland*, 6 Cranch, 8. Quite an extended collection of authorities is to be found in notes to *Nichols v. Knowles*, 17 Fed. Rep. 494, many of which support the rule. The modification of the rule as claimed is that it is not arbitrary, but is to be applied only under equitable considerations applicable to particular cases. It may be conceded as the law that, in the absence of facts showing equitable demands otherwise, the application of payments under the law should be with a view to preserve to the creditor the full benefit of his security; but the rule goes no further. Most of the cases, in making mention of the rule, use some modifying term; as "the rule generally is," or "ordinarily is," or unless there are "controlling equities," or that "the question rests largely in the discretion of the chancellor." In some cases the rule is stated without the qualification, but it is believed that it is because of the peculiar facts of the case rendering it

unnecessary. We think it may be stated on authority that the rule with the modification is universal.

The particular facts upon which appellant relies for the benefit of the rule in his behalf is that, if the fifteen hundred dollars was loaned before the occupancy of the homestead, the homestead is not exempt, but stands as a security for its payment; and that, as to the payments, the law will apply them to the later items of debt, with a view to preserve the homestead as security for the balance. The only security claimed in the case is the alleged liability of the homestead, on the ground of its liability for the debt because of occupancy after the debt was contracted. Counsel have given considerable attention to the term "security." Appellant urges that the homestead stands as security for a part of the debt, because the law authorizes it to be sold for antecedent debts. Counsel quote from Rap. & L. Law Dict.: "A security is something which makes the enjoyment or enforcement of a right more secure or certain. * * * A security on property is where a right over property exists, by virtue of which the enforcement of a liability or promise is facilitated, or made more certain." Then, as applying the definition, the argument states: "The right to have the homestead sold for antecedent debts is expressly given by statute." The statement is of doubtful accuracy, if the meaning is that the homestead, merely as such, where liable for debts only because previously contracted, bears the same relation to the debt as mortgaged or pledged property does to the debt it secures; or, in other words, if the meaning is that the law makes any specific pledge of the homestead a security. The law exempting the homestead is an exception to the general law as to the liability of property, and the provision making it liable for certain debts is but a limitation on the exception, and leaves it, in such cases, under the general laws; and hence we say that a homestead, when liable, stands no more as security than any other property liable to execution, and not specifically pledged. But we think the definition comes short of the purpose intended. The language of

the definition is that it makes the "enforcement" or "promise" more certain. More certain than what? We are not informed, and our inference is that the security makes the enforcement or promise more certain than the mere personal obligation of the debtor or promisor, whatever may be his possessions or financial standing. It may be a pledge of property, or an additional personal obligation ; but it means more than a mere promise of the debtor with property liable to general execution. It is true that, the greater the possessions of the promisor, the more certain the enforcement of his promise, and in a sense the creditor is more secure; but such is not the security known and expressed in the law. "Security," as applied to commercial transactions, is less comprehensive than when generally used, and has a known legal significance. We are clearly of the opinion that no part of the debt was secured within the meaning of the law with reference to the application of payments.

It remains to be determined whether the payments of the $1,833.96 shall be so applied as to cancel the fifteen-hundred-dollar indebtedness that might otherwise be a lien on the homestead of the defendant. The case under our finding is one where there is an entire unsecured claim, for a part of which the homestead might be liable, and payments are made without application by either party; and the query is, will the law so apply it as to subserve the interest of the creditor, and exhaust the homestead of the debtor in so doing, or will it so make the application that the part which could be made a lien on the homestead shall be paid, and leave the debtor his homestead ? Were we to adopt the former, we should go beyond the spirit or reasoning of any case which has come to our notice, and, to our minds, contravene the true spirit and policy of the laws of the state on the question of homestead rights. This court, in consonance with the legislative purpose, has at all times adopted a liberal construction of the law for the preservation of the homesteads of debtors, both from considerations of individual and public good. The spirit of our homestead law goes further than to subserve the design or purpose

of the debtor and owner of the homestead. It looks to the protection of the family of which the debtor is the head, and will not allow him, except by the concurrence of his wife, to make a valid pledge or disposition of it. The law undertakes to guard it for the family. It is certainly the spirit and purpose of the law to guard it against indebtedness, except for debts contracted before its purchase; and if it may be said that both the creditor and the debtor have had the opportunity, in this case, to make the application, and each has failed, will not the law, in applying the equitable rule, look beyond the act of the debtor, and save to the family its home? It is to be kept in mind that the wife is a party against whom this relief is sought, and has in no manner relinquished her homestead privilege. In view of the authorities cited, and of our own laws on the subject of homestead protection, we think the application of the payments should be such as to preserve the homestead right.

Under the head of " The justice of the case," appellant calls attention to the character of the homestead

4. HOMESTEADS: liability for debt: extravagant cost of. in this case; it being stated that it contains about forty acres, with buildings costing about ten thousand dollars, with terraces, drives, etc., and that the homestead was built in part with the money obtained from plaintiff. It has seemed to be the policy of legislation in this state not to place restrictions on the value of homesteads. We have no greater discretion in the application of the law in a case like this than in a case where the homestead as to value would be at the other extreme. In either case the rule as applicable to the facts is the same. Again, while the statement as to the cost may be true, it is doubtful, in view of the record, if, after discharging the four-thousand-dollar encumbrance, there remains a homestead of extravagant value. The house seems to have been built when the defendant was thought to be solvent and prosperous in business. There is no evidence of fraud or design to cheat in making the

Smith v. The Humeston & S. Ry. Co.

expenditures. The former homestead, after its abandonment, was exhausted by his creditors. It is conceded that the defendant is insolvent, and that his other property has been applied to the payment of his debts. To us it does not seem a greater hardship to the plaintiff than to the other creditors. AFFIRMED.