SIOUX CITY FOUNDRY AND MANUFACTURING COMPANY, Plaintiff, v. W. G. MERTEN et al., Defendants and Appellees;

H. G. McNEIL & SON, Cross-Petitioners and Appellants.

**MECHANICS' LIEN: Right to Lien—Payments By Owner To Contractor—Payments by Contractor to Materialman—Applications of Payments—"Mingling of Funds."** It behooves a materialman who has furnished material to a building contractor and who expects to claim a lien on the property of the owner, *to know the source of the money paid him by the contractor*; because when the owner pays money to the contractor in discharge of his contract and the contractor pays such money to the materialman, the latter *must* apply the payment on the account for material which was furnished for the said owner's building. And this is true even though the contractor, who was owing the materialman on several contracts, gives the materialman no directions as to how the payment should be applied, and even though the materialman does not, in fact, know where the contractor had obtained the money. No equitable doctrine of the "mingling of funds" has any bearing on such a transaction.

**ESTOPPEL: Equitable Estoppel—Prejudicial Position By One's Own Conduct.** One may not, by his own acts, place himself in a prejudicial position and then predicate an estoppel thereon.

PRINCIPLE APPLIED: A materialman furnished material to a contractor who was erecting a building for the owner. The owner paid to the contractor a certain estimate, due under the contract. The contractor paid this money, or a part thereof, to the materialman. At this time, the contractor was owing the materialman for other materials furnished on other contracts

with other owners.  The contractor gave the materialman no
direction as to how to apply the payment.  The materialman did
not know where the contractor got the money, and applied the
money on an account for material furnished for a building other
than that of the owner who paid the money in question.  *Held*,
the fact that the materialman might lose his mechanics' lien for
the account on which the money was applied was no reason why
the owner should be held estopped to insist that the money was
wrongfully applied.

**EQUITY:**  Maxims—Doing That Which Ought To Be Done.  Equity
3  regards that as done which ought to be done.  And if party
litigants fail in this respect, the court will do it for them.  So
*held* where it appeared that a materialman, in an action to estab-
lish a mechanics' lien, had improperly applied payments received
from the principal contractor.

**PAYMENT:**  Application—Judgment To Correct—Mechanics' Lien.
4  A subcontractor who, in an action to enforce a mechanics' lien,
suffers a reduction in the amount of his lien because of improper
application of payments by him, is entitled to judgment against
the defaulting principal contractor for the full amount of the
claim.

*Appeal from Woodbury District Court.*—John F. Oliver,
Judge.

Friday, February 18, 1916.

Foreclosure of mechanics' lien. Appeal on the claim that
too small a recovery was allowed.—*Modified* and *Affirmed.*

*Marks & Marks,* for appellant.

*Sargent, Strong & Struble* and *E. A. Burgess,* for appel-
lees.

Salinger, J.—I.  Day and Stone employed one Merten
to construct for them a building in Sioux City, known as the
Davidson building.  They paid him, in the course of construc-
tion, a sum of money, out of which he paid $300 to the appel-
lant, McNeil.  Merten was indebted to McNeil for various
materials used by Merten in his work as contractor, including
material for the Davidson job.  He gave no direction as to the
application of the $300, and McNeil applied this payment to

accounts for material other than that used in the Davidson building. The trial court, in effect, applied this $300 to diminishing the account owed for the Davidson job, and the materialman appeals.

The appellant invokes the general rule which governs the application of payments between debtor and creditor. He urges that, under that rule, since the contractor who did the paying owed appellant on several accounts and gave no direction on which of these accounts the payment should be applied, appellant had the right to apply on any account owed by the contractor, and not to apply on the account owed for material furnished for the building of these owners; and that, having so applied, the owners cannot compel a change in application by crediting the account for material furnished for the building of these owners. Appellant adds that it did not know where Merten got the money that he paid; that he and it acted in good faith; that it may suffer injury if the application made be now disturbed because it "has probably lost its lien right" as to one of the accounts on which part of the $300 was applied; that there is an additional estoppel because the owners knew appellant was furnishing material for which he was not being paid; and that subsequent payments were made to the contractor despite such knowledge; and it insists that, in a loose sense at least, the equitable doctrine applies which prevents one from impressing funds with a trust unless the trust fund has been kept intact, can be traced, and has not been mingled beyond the power to trace.

Appellee responds:

1. That, while this rule does govern payment from debtor to creditor, it may well govern there because, so long as the payer remains silent, he has nothing to complain of when one debt of his instead of another is extinguished by payments made; that, after all, every dollar paid none the less relieves him of the debt he owes, even though it be one debt rather than another; but that the rule does not apply where the

money of A., who owes a debt, is by the creditor applied to extinguish the debt of B; in other words, that the contractor and the materialman between them cannot, by agreement or by failure to give direction, effectuate that one who has furnished money for material shall still owe for the material, because his money was used to relieve from debt another who had not furnished the money.

2.    That appellant was put to inquiry as to where the money paid came from, and had notice where, in justice, it should be applied, because, say they:

(a)    When appellant received from the contractor the $300 in the form of a check, it knew the contractor was engaged in the construction of their building, and that estimates and payments were being made to apply on the construction of said building.    And the contractor never got material without advising appellant for what job it was.

(b)    While the ledger account with the contractor did not differentiate between jobs, it bore references that enabled the segregation of the jobs by going to the original itemized journal entries.

(c)    Appellant knew the owners were having constructed what was styled the Davidson building, and that this was being done when it got the payment in controversy.    The books designated jobs by a designating letter or word, and the Davidson job was designated by "D", and the check that made said payment had the notation "No. D 54".

(d)    Appellant knew that one of the owners was a large stockholder and the other the cashier of the bank upon which the check was drawn, and that both owners did all their business with that bank.

(e)    Appellant McNeil testifies that he knew that, customarily, contractors were paid on estimates, and supposes he knew that course was being followed as to the Davidson building; that at the time the check was paid he supposed the contractor was getting money at times on the contract for

that building, was getting payment on estimates on that building, though it did not know it as a fact.

3. That even if it be true that appellant had no knowledge that the money came from the owners, there is no estoppel to show that such is the fact; that it is not the question whether A knew that he was using the money of B to satisfy his own claims against C, but whether, in fact, the money of A was so used.

4. That there is no mingling of money; that it is proved that the money received from the owners is the money paid over by the contractor; that this is no mingling at all within the equitable rule; that if it be, it is not a mingling of funds with others, but mingling the things that were paid for with the money; and that, in any view, the appellant cannot urge the doctrine of mingling, nor yet an estoppel, upon mingling done by himself, nor injury by loss of lien rights caused by his own voluntary act: in other words, that the owner is not to suffer because the materialman, without the knowledge and consent of the owner, used the money of the owner to pay debts owed to appellant from others, nor because appellant, of his own volition, without the knowledge and consent of the owner, deprived himself of a lien which secured the accounts of others. This defines the dispute.

II. It will clear the controversy if we dispose of citations that are irrelevant, or are not controlling. Some, we deal with fully; others are disposed of in a summary.

In *Hughes v. Flint,* (Wash.) 112 Pac. 633, the materialman is defeated on the ground that he had notice that he. was applying the money of the owner on accounts for material bought by the contractor for others than Flint, and this, because the materialman kept the contracts separate on his books, and the Flint checks contained the endorsement "on contract"; also, because a conflict was resolved in favor of a direction to apply on the Flint job.

On its face, *Central Planing Mill & Lumber Company v.*

*Betz,* (Ky.) 92 S. W. 591, sustains what was done by the trial court here. But in a later case, *Thacker v. Bullock,* (Ky.) 131 S. W. 271, 272, it is said that the evidence in the *Betz* case showed that the plaintiff was notified that the money paid it by the contractors came from him, and that it was requested to apply the money to that account; that the chancellor's judgment was based on this evidence, and that the case was affirmed on the ground that on these facts there was no reason for disturbing his conclusion.

III. There are cases, in effect, that, when the money paid is that of the contractor, the materialman, having made application to some debt of the contractor, cannot be compelled by others to change the application for their benefit. We do not think them controlling. One of them is *Brigham v. Dewald,* (Ind.) 34 N. E., at 498, which is, in effect, that if money paid on contract and paid over to, and in the absence of direction is applied by a materialman on the contractor's general account, this money is in such sense the property of the contractor as that the sum paid will not avail the owner as a credit on material bought of the same materialman later.

The conflict raised by cases like *Hanson & Myer v. Manley,* 72 Iowa, at 50, and *Hansen v. Rounsavell,* 74 Ill., at 241, is one in seeming, only. These latter hold merely that if one be surety on a debt and the debtor makes a payment by foreclosure had upon his own property, or pays out of his own funds, but the payment is not large enough to pay what he owes, secured and unsecured, he and his creditor may work an application, first, upon what is unsecured. In other words, one who becomes surety takes the risk that honest payment of unsecured debts may leave a deficiency which the surety must make good.

IV. The following cases have more or less tendency to sustain the decree: In *Crane v. Pacific Heat & Power Co.,* (Wash.) 78 Pac. 460, it is conceded that, as to moneys which

are the absolute property of a debtor, his surety cannot control application. Yet it is held that, where a contractor is paid for plumbing and the proceeds are by his materialman applied on accounts for jobs on which the surety is not liable, the surety, on suit for balance due on the job secured by it, may compel the reapplication to the account for which it is alone liable. The decision is put on the ground that the contract of the surety company is not to secure old claims then due and unsecured, or any other claim than the one which was the subject of the contract with the owner. It is further said that the general rule, broadly stated, applies to cases only where the principal makes the payment from funds which are his own, and free from any equity in favor of the surety to have the money applied in payment of the debt for which he is liable. This seems to be squarely sustained in *Merchants' Ins. Co. v. Herber*, (Minn.) 71 N. W. 624, which holds, additionally, that, where the specific money paid to the creditor and applied on the debt of the principal for which the surety is not bound is the very money for the collection and payment of which he is surety, he is not bound by such application, and he is equitably entitled to have the money applied to the payment of the debt for which he is liable, unless the creditor shows a superior equity to have the application as made stand. This, we think, is not materially affected by the construction given it by *Heims v. Elliott*, (Wash.) 119 Pac. 826, that the *Herber* case holds that an obligee in a bond, as against a surety, cannot apply payments made by the principal to a debt which the principal owed before the bond was given. In our opinion, this is in harmony with *Ida County Savings Bank v. Seidensticker*, 128 Iowa, at 64, 65, that where, during the period of the service of a cashier, for which the surety on his bond is liable, the cashier becomes entitled to credits sufficient to wipe out such liability, it should be applied to that liability rather than to indebtedness due the bank from the cashier subsequent to the time when the liability on the bond terminated.

*Stewart v. Woodward,* 50 Vt. 78, decides that, where a general agent of some tailors, who owed a debt to defendant, delivered him a suit of clothes belonging to them, on account of the debt, and defendant supposed the agent had authority to do this, but knew that the goods belonged to the tailors, they having charged the goods to defendant, it was held that they were entitled to recover therefor in an action of book account. It is further said that the defendant's good faith avails him nothing; it does not cure the bad faith of the agent, where plaintiffs had not misled the defendant. And *Wiesenfeld v. Byrd,* 17 S. C. 106, and *Thompson v. Brown,* Moody & M., 40, hold that, though a surviving partner pays firm funds to one who is his creditor and a creditor of the firm, without directing application, application to the firm debt will be compelled.

V. The following cases strongly support appellees: In *Young v. Swan,* 100 Iowa 323, at 326, 327, citing *Stewart v. Woodward,* (Vt.) 28 Am. Rep. 488, and *Gleaton v. Tyler,* (S. C.) 21 S. E. 333, we said:

"The most that can be claimed for appellants is that the wife furnished the husband with money with which to purchase the material for the house; that he purchased it of plaintiffs, paid them the money which she had given him, but did not direct that it be applied upon this particular account; and that plaintiffs applied it on general account. . . . Can he now, in an action to establish and foreclose a mechanic's lien against the property of the wife, insist that these payments of the wife's money shall be applied upon the husband's general account, to the detriment of the wife? We think not. The husband could not directly appropriate this money to his own use against the consent of the wife, and it surely is not the province of a court of equity to misappropriate it."

*Crane Bros. Mfg. Co. v. Keck,* (Neb.) 53 N. W. 606, recognizes the general rule as to application. "Yet", says

the syllabus prepared by the court, ''there is an exception to this rule, as, where the money was received by the debtor from a third party, whose property would be liable for the debt in case the money was not applied upon the third party's liability.'' The case is squarely followed on facts quite like those at bar, in *Lee v. Storz Brewing Co.*, (Neb.) 106 N. W. 220.

In *Williams v. Willingham-Tift Lumber Co.*, (Ga.) 63 S. E. 584, the contractor paid the materialman funds received from an owner, one Reed. He paid by his own check without informing, at the time of payment, of the source of the money. When later he asked application to Reed's material account, this was refused, with a statement that the money had already been applied to bills of his on other contracts. A lien was denied, and it is said that this is not in conflict with the general rule of the right by the creditor to apply, in the absence of directions; that that is a rule between the creditor and the debtor; but that, where the rights of third persons are involved, the law will make the credit according to principles of justice and equity, will not permit the money of one man to be used in the payment of the debt of another man, or declare a lien on the property of the man who has paid in full for all the material furnished to improve his property, and thus relieve from a lien the property of a man who still owes for the material that was used to improve his property.

VI. The citations thought to give support to the appellant come to this:

1. The general rule governing applications between debtor and creditor apply to open accounts only. *First Nat. Bank v. Hollingsworth,* 78 Iowa 575, 576-7; *Dey v. Anderson,* 39 N. J. L. 199, at 205.

2. Where a partnership owed a balance due at the time when one partner died, and such balance was carried forward in the account of the reorganized firm, payments later made

by it should be applied to the earliest items of what made said balance due, rather than to later items, where to do the last would result in holding the dead partner's estate for said balance'due—the holding being put on the ground that the whole account was mutually treated as a running one. *Devaynes v. Noble,* 1 Meriv. 528.

3. If a partnership allows a partner to keep an account in his own name with one who is ignorant of the existence of the partnership, it cannot complain that money paid his creditor by the partner was applied to the items in that individual account, in the order of priority. *Allen v. Brown,* 39 Iowa 330, at 332; *Hanson's* case, 72 Iowa 48, 52.

4. A receipt fraudulently obtained from the material-man will not avail the owner to whom said receipt is exhibited, because he thereupon pays money to the contractor, in the absence of a showing that the owner does not owe the contractor enough to pay the materialman. *Schallert-Ganahl Lumber Co. v. Neal,* (Cal.) 27 Pac. 743.

5. Where the contractor pays money received from two owners upon an account for material furnished for their buildings, and the payment is equitably apportioned between the buildings, the fact that it is not shown by the record exactly how the payment was apportioned will not defeat the lien for a balance claimed to be due, where the contractor did not direct what sums should be applied on each building. *Smith v. Wilcox,* (Ore.) 74 Pac. 708, at 710.

6. The rule will be applied between debtor and creditor where there are no equitable considerations.

7. A contractor and one subcontractor cannot change an application once made as intended, and thus prejudice the rights of another subcontractor in a fund reserved to pay all. *Green Bay Lumber Co. v. Thomas,* 106 Iowa 420, 424.

8. The rule will be applied, if it does not appear what is the source of the money that was paid over.

9. It will be applied where it is not shown that the funds

were furnished by the owner. *Union Trust Co. v. Casserly,* (Mich.) 86 N. W. 545, at 546; *Thacker v. Bullock Lumber Co.,* (Ky.) 131 S. W. 271, 272; *Waterman v. Younger,* 49 Mo. 413; *Pipkorn Co. v. Evangelical Luth. St. J. Society,* (Wis.) 129 N. W. 517.

10.  Where it does not appear who furnished the money and a lien is satisfied, it will not be revived by changing the application which satisfied the lien, without the consent of the one against whom such lien existed before the satisfaction. *Chicago Lumber Co. v. Woods,* 53 Iowa 552.

11.  One who contributed nothing to the money paid over is bound by any application which binds the payer. *Heim v. Elliott,* (Wash.) 119 Pac. 826.

12.  Any money paid to the contractor becomes his own property and, therefore, any application binding on him is binding on those who paid him the money. *Sheppard v. Steele,* 43 N. Y. 52, 60.

13.  The rule will be applied unless the creditor knows that he is receiving the money of a third person, or is put on inquiry as to whether this be not so.

14.  It will be applied unless it appears that the money paid over can be traced through the debtor to the creditor. *Thacker v. Bullock Lumber Company,* (Ky.) 131 S. W. 271, 272.

15.  It will not be applied where the materialman had notice that he was applying money received by the payer for one account to the extinguishment of another account.

16.  The owner is bound to see to it that application is made to his account, or give notice that it should be so made. *Jefferson v. Church of St. Matthew,* (Minn.) 43 N. W. 74.

## 2.

There is, and can be, no serious claim that the $300 paid by the contractor to McNeil was not money paid to Merten by

the owners, and we are fully persuaded that this was the source of that $300 payment. All that is relevant in these 16 ultimate propositions is: (1) that unless the owner gives notice that money paid by him to the contractor must be applied only to material furnished the owner; (2) or unless the materialman knows that the money he is receiving was paid the contractor to be so applied; and (3) unless the money paid by the owner can be "traced", then any money paid by the owner to the contractor is to be treated not as in any sense a trust fund to be applied for the benefit of the owner, but as a general payment to the contractor by means of which what is paid to him becomes absolutely his own property, freed from any duty as to its application. So what we have to determine is whether we should accede to these, rather than to adopt the holdings in *Young v. Swan, Crane v. Keck, Lee v. Brewing Co.* and *Williams v. Lumber Co., supra.*

1. MECHANICS' LIEN: right to lien: payments by owner to contractor: payments by contractor to materialman: applications of payments: "mingling of funds."

VII. Concretely, this is the situation: The owners of a building being constructed by a principal contractor made him a large payment on estimates. Part of this he paid over to a materialman who had unpaid accounts against the contractor for material furnished the building of the one who had furnished this money, and also material that had gone into other jobs. The contractor being silent when he paid, the materialman applied what was paid upon an account for material furnished the contractor for the building of a stranger, and thus "probably" worked a discharge of his lien against this third person. He asks us to find estoppels and to apply certain equitable rules as to mingling of funds, to the end that he may not be disturbed as to what he did without the consent of these owners; that is to say, he contends equity requires, rather than that he shall lose the lien which he released by his own voluntary act, that we shall

sustain his use of the money which the owners furnished, and thus save him from the probable loss of a lien which once secured his claims against a third person. In ultimate effect, it is proposed that we sanction that the money paid by these owners shall leave their own account for material unpaid, and pay the debt of a third person, because of acts done by the appellant without the knowledge and consent of the one whose money was thus used. There would not be very much substantial "equity" accomplished by our doing this. When it is all said, the vital facts are that Day & Stone paid the contractor money, of course, with the mutual understanding that this would discharge in part what they were owing for labor and materials put into their building; that the contractor paid part of this money to McNeil; that McNeil was at perfect liberty to apply the payment on the Day & Stone job; that such application would have cost appellant nothing which the law recognizes—that so to apply would have worked, merely, a diminution of the Day & Stone account by $300, and an augmentation of the funds of the appellant in $300; that, instead of pursuing this course, appellant, on its own motion, credited the $300 on the material account of strangers; and that the essential result of doing what appellant asks will be that it will have $300 of Day & Stone's money, without compensation to them other than that the money furnished by them has cut down the indebtedness of some other person. We are unable to agree that any sound rule of estoppel, or on mingling of funds, requires the working out of such a result. All equity is opposed to what appellant claims. That must be, indeed, a strained use of the equitable jurisdiction which will permit one, without the knowledge or consent of another, to appropriate the money of that other to the payment of the debt of a third person.

We are of the opinion that no question of notice is involved; that no equitable doctrine on the mingling of funds has any bearing; that we need not go into whether or not

appellant knew or should have known where this money which it so used came from; that the only question is (and appellees are not estopped as to it) whether its money was thus appropriated. What rule of law or equity is violated if we now hold that appellant must give Day & Stone credit for $300 because it has received that much of their money? To compel this will result merely in letting appellant keep $300 of its money and giving it credit for that amount. What difference does it make that appellant was not informed where this money came from until after it had made the application? Ordinarily, and freed from some such rule as governs the transfer of negotiable paper to one who takes it without notice and for value, one may always assert title to his money or property against one who has misappropriated it. The estoppel in this case comes to this: Appellant says:

2. ESTOPPEL: equitable estoppel: prejudicial position by one's own conduct.

"Money of another was paid me, but I 'mingled' it by applying it to a debt that others owed me; and I may have lost some of my rights by doing this. Therefore, you must not assert that this money is yours and that you should have credit for it on the debt you owe me. I have the right to use your money to pay off what someone else owed me, unless you advise me before I do so that you make some claim in this money."

In fewer words, an estoppel is built up by a prejudice which was wholly caused by the act of the one urging the estoppel. The claim is not persuasive.

We find nothing in the authorities cited, which holds, and do not believe, that the equitable doctrine of mingling funds has any application here. If there was any "mingling", it consists of the applying, by the contractor and the materialman, of the money of A upon debts owed by B and C. Equity suggests no difference between what was then done and taking the money of one's principal and depositing it to the credit of the agent mixed with his own, and claiming for this that

the bank owes the principal nothing, and may use all that was deposited to pay itself a debt due from the agent; and such claims have always been held to be untenable.

In *Van Alen v. American Nat. Bank,* 52 N. Y. 1, 7, it is held that, if one deposit a sum belonging to another with one belonging to himself, the bank would owe the first sum to that other, though the particular bills that were his cannot be identified. And this doctrine is applied in *Crane v. Keck, supra,* to save the owner's money applied by the materialman to the debt of another. The two hold that, when money belonging to two is paid over, the obligation to one is not lessened because there is as well one to the other; that in equity the ostensible obligation yields to the actual.

The same principle was affirmed in *Whitley v. Foy,* 6 Jones Eq. (N. C.) 34. So, also, of *Frith v. Cartland,* 2 Hem. & Mil. 417, where a person received from the plaintiff certain acceptances to take up paper owing to the plaintiff, and got them cashed and ran away, after mingling the money with his own, and making various changes and transformations. It was decided that plaintiff was entitled to the money in preference to creditors, Vice-Chancellor Wood saying that "the court attributes the ownership of the trust property to the *cestui que trust* so long as it can be traced", and that said mingling and changing had no effect—and see *Merrill v. Bank of Norfolk,* 19 Pick. (Mass.) 32.

In the case of *Overseers of the Poor v. Bank of Va.,* 2 Gratt. (Va.) 544 (44 Am. Dec. 399), an attorney deposited a check for the amount of a judgment in favor of his clients to his own credit in a bank where he had a small amount of other money to his credit, and died. On the day of his death, a note fell due belonging to the bank which it claimed to set off, but the court held that the clients were entitled to the money.

In *Commissioners v. Springfield,* 36 Ohio 643, the county treasurer embezzled money from a mass which was mixed funds and belonged to the county and other corporations of

which the county treasurer was also treasurer.  On a settlement with the county board, he was unable to pay these other corporations, but there was sufficient to satisfy the amount owed to the county, which the county board directed to be placed to the credit of the county and appropriated to county purposes.  It was held that the county was liable in equity to account to the other corporations for their proportionate share of the funds so appropriated, and this with a statement that, though the amount appropriated by the county was the exact sum due it, "neither mingling the money, the embezzlement, nor the appropriation by the county, had the effect of destroying the interest of the city, township and school boards in the sum which was in the treasury at the time of the settlement''; and this rule would apply to individuals, under such circumstances, as well as to special corporations.

*Dey v. Anderson, supra,* seems in a sense to involve the converse of the controversy here.  It seems to be a holding that, if the materialman wants to protect himself against having payments applied where he is already well enough secured, and thus lose payments of claims not so well secured, he should not employ running accounts, but treat each building account as a separate debt; and that, if he does maintain a running account only, and the builder makes him a payment without direction, it must be applied on the running account items according to seniority, even though this results in payments upon claims which are well secured, to the exclusion of others not thus fortified.  And its citations—*Beckel v. Petticrew,* 6 Ohio 247, and *Waterman v. Younger,* 49 Mo. 413—more clearly than its text, indicate that this is what it decides.

*Williams v. Willingham-Tift Lumber Co.,* (Ga.) 63 S. E. 584, at 585, sums it up well.  It holds that the evidence did not warrant the directed verdict, because it shows that plaintiff had been paid for all the material it furnished the contractor to be used in the improvement of the property of Reed. And it is added that, if the materialman neglects to give the proper credit, the fault was not the owners', and the loss

should not fall upon them; that when the materialman has furnished at the same time material to one contractor for the improvement of the property belonging to different persons, and has full knowledge of the separate contracts, and money is paid to the materialman by the contractor, from time to time, on account of the material so furnished, it is incumbent upon the materialman to keep separate accounts, and to find out from the contractor on what contract the money is paid, and to what account it should be applied; that if he does not do so, but applies the money as a credit on a general account against the contractor, he thereby waives his right to a lien on the owner's property, and must look alone to the contractor; that the lien claimant is presumed to keep his lien in mind, and if he is to seek its enforcement, the law requires him to preserve its unity as a claim against the particular property; that if he does not, but so mingles it with other claims as to necessitate a process of separation by the courts, it may well be held that he has waived his lien; that with the state of accounts between the contractor and the materialman relating to materials furnished for other buildings than his own, the owner has nothing to do; and that he has the right to have all his money paid to the materialman applied for his benefit, and not appropriated by the materialman to the payment of a general account against the contractor, which includes accounts for material furnished to the contractor for other persons.

We hold that the money of these owners was misappropriated, and that equity will correct this against the one who did the misappropriating, even if he did not know at the time that he was misappropriating, when no controlling equity stands in the way of the correction. We hold further that none such intervenes where the materialman loses, if at all, because he volunteered to use the money of one to pay the debt of another, while, on the other hand, the owners will, through an act of the materialman, be compelled to pay their

3. Equity: maxims: doing that which ought to be done.

debt to him twice—when on one side stands one who received $300 and credited some debtor of his in that amount, and on the other, one who has paid $300 at a time when he owed it, and is now to pay it again, because the money was used to credit another debtor.

### DIVISION II.

Appellant urges in argument that, even if a deduction of $300 from his claim against the owner be upheld, he should have had judgment against the principal contractor for the full claim, because that contractor made default. Appellees answer that a statement in abstract so limits the issues here as that we should not consider this point. This avoidance seems to rest upon misunderstanding of said statement. While it is said that the controversy here is limited to whether the $300 credit was proper, this is at the same time amplified to cover whether deducting same from either "the account" or from "the mechanics' lien so established" was proper. Now the principal contractor owed the "account". He made default and asked no deduction, and he could not. *He* did get credit on *something* which he owed appellant. No $300 of his was used to lessen the debt of another. The judgment against him should be for what is prayed, and the decree below is modified to that extent.—*Modified* and *Affirmed*.

4. PAYMENT: application: judgment to correct: mechanics' lien.

EVANS, C. J., LADD and GAYNOR, JJ., concur.