**LUMBER SUPPLY INC., Appellee,**

v.

**Everett H. HULL and Anetta R. Hull, New Homes Realty, Inc., Eugene S. Hunter, James W. Hansen, Noelke-Lyon Mfg. Co., Nagle Lumber Co., Frank Paxton Lumber Co., Johnson County Ready-Mix and Hawkeye Lumber Co., Appellants.**

No. 52838.

Supreme Court of Iowa.

May 7, 1968.

Edward W. Lucas, John T. Nolan, Nolan, Lucas & Nolan, Iowa City, for appellants.

Gene V. Kellenberger, Keyes & Crawford, Cedar Rapids, for appellee.

STUART, Justice.

This is an action in equity to foreclose a mechanics' lien. The parties essential to this appeal are Lumber Supply, Inc., plaintiff, hereinafter referred to as the supplier; New Homes Realty, Inc., a corporation owned by Eugene S. Hunter, hereinafter referred to as the contractor; and Everett Hull and Anetta Hull, for whom the contractor was building the home against which the mechanics' liens were filed, hereinafter referred to as defendants.

The specific issue presented is whether, under this record, the supplier failed to treat defendants equitably by applying funds received from the contractor to his preexisting note rather than to his current accounts.

The facts are not in serious dispute. For some years the contractor had been building homes for sale and on contract. He had purchased large amounts of materials from the supplier. In the course of their dealings, the contractor became indebted to the supplier on notes and open account in excess of $14,000. On June 19, 1964, in order to secure credit to purchase additional material, the contractor transferred all the indebtedness to notes secured by real estate mortgages and other security.

Thereafter the contractor secured material from the supplier to build homes for three different parties including these defendants. Separate records were kept of the materials purchased for each house. The contractor and supplier agreed advances drawn by the contractor were to be applied to the appropriate job. The secured notes were to be reduced by the sale of mortgaged property and profits from the contractor's operations.

Defendants, without taking advantage of the protection afforded them by section 572.-13, Code of Iowa, paid contractor $18,000. It went into his general account and was used for his personal and business expenses. By check from the account dated August 1, 1964, contractor paid $5,000 to supplier without direction for its application.

Witness for the supplier testified: "I don't recall the exact words, but as best I can recall, he said Hell, put it wherever you want to."

Contractor's testimony is unclear. On direct examination he testified: "In the plaintiff's testimony there has been some testimony that I took a $5,000.00 check into the office at Lumber Supply and said some-

thing to the effect 'put it on whatever account you want to'. That is a correct statement of what happened as far as I can remember, but that meant any one of the three accounts then current, Diecke, Thomas or Hull."

On cross-examination, he testified: "Q. Now, my question is, did Mr. Helland stand before you that morning or that day, whenever it was, during the day and ask you where that $5,000 was to be applied? You can answer that yes or no. A. I don't remember. It could have been and it could not have been. It would have been an unusual question, I think. Nobody had asked me that before up there. Lumber Supply had never asked me where a specific payment was to be applied. By the same token, I never told Lumber Supply where a specific amount was to be applied.

"Q. And that particular check does not show on its face anything that you wrote on it or anything that anybody wrote on it relating to any specific account where it was to be applied, does it? A. The only thing the stub shows is 'On account'. * *

"I don't remember, in any event, whether Mr. Helland asked me or not, whether I did or didn't tell him where it was to be applied that I can recall. And I certainly wouldn't have because I owed three accounts. I might have been going to make it apply— I would have told him to prorate it. Regardless of what I would have told him, I didn't tell him anything. * * * On account means, to me, means the accounts of these three houses at the time."

Witness for supplier testified: " * * * I didn't know exactly what to do with it, so I called Mr. Bradley, a lawyer, and asked him what I should do with it because there were so many accounts involved. And, I think he had Mr. Hunter talk to him previously also, and he advised that if it hadn't been indicated and there was nothing on the check and Mr. Hunter didn't indicate any preference of where it should be applied, put it on the oldest accounts, which I did, which

is a note representing all of the old accounts."

Contractor also gave supplier a $1,000 check dated August 25, 1964 and a second $1,000 check dated August 27, 1964. These were also applied to the notes receivable without further inquiry.

The supplier filed a timely mechanics' lien against defendants' home, as did several other subcontractors. When the contractor failed to pay, this suit was brought to foreclose the liens. Defendants sought to defend against supplier's lien by claiming the $7,000 applied to the note should have been credited against the amount due from them.

The trial court held supplier, in the absence of direct instructions had the right to apply the payments as it saw fit and established its mechanics' lien against defendants' home in order of its priority. We affirm.

■ I. The general rules for the application of payments are well established. If a debtor makes a voluntary partial payment to a creditor to whom he is indebted on several accounts, he has a right to select the items to which the payment shall apply. If he does not indicate his wishes, the creditor may ordinarily make such application as he desires. If neither party makes application the law applies it according to its own notions of justice. Whiting v. Eichelberger, 16 Iowa 422, 430; First National Bank of Stewart v. Hollinsworth, 78 Iowa 575, 578, 43 N.W. 536, 537, 6 L.R.A. 92; Village of Winfield v. Reliance Ins. Co., 64 Ill.App.2d 253, 257, 212 N.E.2d 10, 12; 40 Am.Jur., Payment, §§ 108, 110, 117, 129; 70 C.J.S. Payment, §§ 50, 52, 57, 68.

Here the contractor did not direct the application of these three payments totalling $7,000 and the supplier had the right to credit the payment as it desired unless some reason appears why the general rule should not apply to these facts.

Bain-Nicodemus, Inc. v. Bethay, 40 Tenn. App. 487, 501, 292 S.W.2d 234, 241, states a

possible exception: " * * * when a contractor owes the material man two accounts, makes payment to the material man with funds paid to such contractor by one secondarily liable for such account and the material man has notice of the source of such fund, it is the duty of the material man to give the credit so as to discharge or diminish the obligation chargeable against its source."

The same principle finds support in the following cases. Sioux City F. & M. Co. v. Merten, 174 Iowa 332, 343, 156 N.W. 367, 370, L.R.A.1916D, 1247; Hawkeye Lumber Company v. Day, 203 Iowa 172, 173, 210 N.W. 430; McDonald Mfg. Co. v. Leverett, 203 Iowa 1215, 1217, 211 N.W. 849; United States for Use of Carroll v. Beck, 6 Cir., 151 F.2d 964, 966, 166 A.L.R. 637; R. P. Farnsworth & Co. v. Electrical Supply Co., 5 Cir., 112 F.2d 150, 153, 130 A.L.R. 192; Hollywood Wholesale Electric Co. v. John Baskin, Inc., 121 Cal.App.2d 415, 429–431, 263 P.2d 665, 674–675; Restatement, Contracts §§ 387, 388.

Defendants contend that actual notice is not necessary. They place the responsibility on the materialman to learn from the contractor to which account the payment should be applied.

They rely heavily on Sioux City F. & M. Co. v. Merten, 174 Iowa 332, 156 N.W. 367, L.R.A.1916D, 1247. There Merten was employed to construct the Davidson building in Sioux City. During the course of construction the owners paid him a sum of money, out of which he paid $300 to McNeil. Merten owed McNeil for materials used in various jobs including the Davidson building. He gave no direction as to the application of the $300 payment and McNeil applied it to accounts other than that for the Davidson building. The trial court reapplied the $300 to the Davidson job account and reduced the balance due by that amount.

In affirming the trial court, we followed Williams v. Willingham-Tift Lumber Co., 5 Ga.App. 533, 536, 63 S.E. 584, 585, which placed the responsibility on the supplier to find the source of money paid by the contractor and to apply it to the right account, if he wishes to preserve his lien rights.

We held: "That the money of the owners was misappropriated, and that equity will correct this against the one who did the misappropriating, even if he did not know at the time that he was misappropriating, when no controlling equity stands in the way of the correction. We hold further that none such intervenes where the materialman loses, if at all, because he volunteered to use the money of one to pay the debt of another, while, on the other hand, the owners will, through an act of the materialman, be compelled to pay their debt to him twice—when on one side stands one who received $300 and credited some debtor of his in that amount, and on the other, one who has paid $300 at a time when he owed it, and is now to pay it again, because the money was used to credit another debtor." 174 Iowa at 348–349, 156 N.W. at 372.

Assuming for our purposes here, Merten correctly states the Iowa law, there remains a crucial distinction between those facts and the facts in this case. There the court said: "There is, and can be no serious claim that the $300 paid by the contractor to McNeil was not money paid to Merten by the owners, and we are fully persuaded that this was the source of that $300 payment." 174 Iowa at 342–343, 156 N.W. at 370. Here defendants were unable to show any part of the $18,000 paid to the contractor was included in the $7,000 the contractor paid the supplier. The contractor did not indicate where it should be applied. He only testified that the money came from one of the three houses he was building. There was evidence his account was nearly exhausted when he wrote the $5,000 check. He did not know to which account the payment should be applied.

We have been cited no cases which have required the supplier to apply funds to a particular account in the absence of proof of the source of the fund. In McDonald

Mfg. Co. v. Leverett, 203 Iowa 1215, 1217, 211 N.W. 849, we said:

"The testimony conclusively shows that the $150 represented by this check came directly from the funds paid by Leverett to White & Baird * * *. When appellant received said check * * *, he knew that the money had come from Leverett. With this knowledge on his part, he had no right to make application of this $150 payment on the old account of Poole & White. We have settled this proposition in the case of Sioux City Foundry & Manufacturing Co. v. Merten, 174 Iowa, 332, 156 N.W. 367, L.R.A.1916D, 1247."

In Hawkeye Lumber Company v. Day, 203 Iowa 172, 173, 210 N.W. 430, we said: "The testimony disclosed that *out of the money paid to Sulser by Mrs. Day,* he paid to the plaintiff the sum of $534." (Emphasis supplied)

In R. P. Farnsworth & Co. v. Electrical Supply Co., 112 F.2d 150, 153, 130 A.L.R. 192, the 5th Circuit Court said: "There is no trust attaching to the monthly payments made to the contractor which prevents his using them generally as his own; but *when he pays them over to a furnisher of materials for the job who knows their source,* there is a duty to apply the money to the payment of those materials rather than to some other debt." (Emphasis supplied)

Knowledge of the source of the fund was required in United States for Use of Carroll v. Beck, 6 Cir., 151 F.2d 964, 966: "The federal cases, however, generally deny the debtor's power to control application, insofar as the interests of others are affected, *when the creditor knows where the money comes from."* (Emphasis supplied)

On the other hand failure to show the source of the fund has been fatal to parties situated like defendants.

In Bay Lumber Co. v. Eaton, 119 Cal.App. 362, 365, 6 P.2d 289, 290–291, the court said: "The record further shows that the contractor, in receiving payment for his work, deposited all the payments to his credit in a general account at the bank with which he was doing business, and that from time to time he drew checks on this account in payment for materials furnished by the plaintiff. That there was never any designation by the contractor in making payments, as to what account the payment should be applied, nor does the record show that any information was ever given to the plaintiff as to the particular source from which any particular sum of money was received by Eaton, the contractor, when making payments to the plaintiff."

The court held: "The fact that the plaintiff knew that there were different sources from which the contractor Eaton might receive money is not equivalent to notice or knowledge that the contractor had received any particular payment from any particular source." Plaintiff's mechanics' lien was upheld.

"In the absence of anything appearing as to the source of the fund from which a subcontractor makes a payment to a materialman, to whom he is indebted on account of several obligations, without any direction as to application, the payment may be applied by the materialman to any obligation." Hollywood Wholesale Electric Co. v. John Baskin, Inc., 121 Cal.App.2d 415, 429, 263 P.2d 665, 674.

■ Even if we place the responsibility of determining the source of the fund on the materialman as was done in Sioux City F. & M. Co. v. Merten, supra, we cannot expect him to know more than the contractor himself. There is no claim of fraud or collusion. The money from all three owners was placed in the contractors general account and paid out for various purposes. Defendants' payments were so mingled with those of others that they could not be identified. This was made possible by defendants who paid the contractor without claiming the protection to which they were entitled under section 572.13. They invited their own dilemma.

As defendants failed to show they were the source of the money the contractor paid

the supplier, the rule of Sioux City F. & M. Co. v. Merten, supra, is not applicable.

II. Defendants contend the rule should be applied to the following established facts: Supplier agreed to apply money from the "draws" to current accounts receivable. The contractor testified the "draws" were his only source of income. The supplier could very easily have learned this from the contractor. The supplier knew or should have known the funds did not come from a sale of property as it was not asked to release any security. The funds should have been applied to the current accounts and although it is not possible to show which one, defendants are entitled to have the whole $7,000 applied to their account as the other two have been settled—one by payment and one by judgment.

■ No authorities are cited which support this position. Even though there is an element of equity in this reasoning, we are not inclined to extend the exception to the general rule to these facts. If the debtor fails to direct the application of the funds, we believe a third party seeking to require a creditor to apply the payment to his account must show he was the source of the money paid the creditor.

III. In view of our decision on this crucial point, it becomes unnecessary for us to consider the other matters raised in the briefs. We have not overlooked supplier's claim that Sioux City F. & M. Co. v. Merten, 174 Iowa 332, 156 N.W. 367, L.R.A. 1916D, 1247, is contrary to the mechanics' lien statute and should be overruled. This argument was raised in Hawkeye Lumber Co. v. Day, 203 Iowa 172, 173, 210 N.W. 430. We said: "The opinion therein does not purport to construe the mechanic's lien statute. It only purports to declare an equitable principle in the application of it."

We are not passing upon the soundness of Sioux City F. & M. Co. v. Merten insofar as it places the responsibility upon the creditor to learn from the debtor the source of the funds given in payment.

The case is affirmed.

Affirmed.

All Justices concur.